**PERKINS ELECTRIC SWITCH MFG. CO. v. BUCHANAN & CO.**

(Circuit Court, E. D. Pennsylvania. March 24, 1904.)

No. 51.

1. PATENTS—INFRINGEMENT—INCANDESCENT LAMP SOCKETS.

The Perkins patent, No. 626,927, for an incandescent lamp socket, was not anticipated, and, while the parts were old, covers a new combination of utility, and discloses patentable invention. Claims 3, 4, and 9 also *held* infringed.

2. SAME—COMBINATION AND AGGREGATION DISTINGUISHED.

Elements of the patent considered, and *held* to constitute, not a mere aggregation of separate elements, but a composite construction, in which the several parts co-operate to produce a common and combined result, which the law accepts and sustains.

In Equity. Suit for infringement of letters patent No. 626,927, for an incandescent lamp socket, granted to Charles G. Perkins June 13, 1899. On final hearing.

Howson & Howson, for plaintiffs.

Marcellus Bailey and Curtis B. Johnson, for defendants.

ARCHBALD, District Judge.[1] The issues in this case are few, and comprised within a narrow compass. While infringement is denied in the answer, it was not seriously disputed at the argument, and could

[1] Specially assigned.

not successfully be on the proofs. The socket manufactured by the defendants, in its general structure, is closely patterned after that of the complainants, and, whatever may be the incidental improvements, infringes upon it, for which, of course, the patent held by the defendants covering these improvements affords no excuse. Neither, in view of this, can they very well question its utility, having copied it. If it had no advantage over other existing structures, why not follow them instead?

The novelty of the invention is contested, but the references cited against it are few, and, however they may limit, do not otherwise seriously affect, it. The patent held by the complainants was issued to Charles G. Perkins June 13, 1899, and is for an incandescent electric lamp socket. The claims relied upon in this suit are as follows:

"(3) In combination in a lamp socket, a cap, a shell, two blocks of insulating material, with recesses arranged to form two insulating-chambers, a plate with a binding-screw located in one of the chambers, and having its ends secured to the respective blocks, a plate with a binding-screw located in the other of the chambers, and having its ends secured to the respective blocks, and grooves in the edges of the upper block for the passage of the circuit-wires of [to] the respective binding-screws, substantially as specified.

"(4) In combination in a lamp socket, a shell, two blocks of insulating material with recesses arranged to form insulated chambers, a plate with a binding-screw located in one of the chambers, a plate with a binding-screw located in the other of the chambers, and a switch-block located in one of the chambers, and adapted to make contact with the end of the plate in the same chamber, substantially as specified."

"(9) In combination in a lamp-socket, a cap, a shell, two blocks of insulating material located within the shell, insulated chambers formed by recesses in the insulation, and plates bearing outwardly-extending binding-screws located in the recesses, and having their ends secured by screws to the respective insulating-blocks, substantially as specified."

But four references are produced from the prior act, and of these the Snow and the Hubbell patents may be classed together. Both, in addition to a cap and shell, are made up of two blocks, or more properly disks, of insulating material, secured together by metal plates on either side, to which the circuit wires—introduced in the Hubbell through grooves on the edge of the upper block—are attached by outwardly extending binding-screws. So far there is a correspondence with the plaintiffs' device, but there it stops. Between the blocks or disks is a large, single, open chamber, in which the key or switch mechanism is set, and across which there is an uninterrupted course for the electric current in case a short circuit happens in any way to be induced, while in the Perkins the two blocks are brought close together, and separate contact chambers, insulated from each other, carved out of them, to obviate the danger which the others invite. Admittedly, this differentiates the two constructions, and does so with effect. The Wirt socket has little relevancy. It consists of a single block—for strength—between which and the screw extension for the lamp base a large, open chamber is left, to accommodate the switch mechanism, the same as in the others mentioned, with the additional danger that the bearded ends of the circuit wires may get in ·contact with the metal of the screw extension below, there being nothing in between to prevent. The Pass and Seymour—the only one remaining

to be noticed—is porcelain throughout. It is made up of two main parts—a base and a body—so assembled and fastened together as to leave an arcing chamber between them, in which, side by side, the two legs of the electric circuits end, separated by a projecting wall or curtain. It must be confessed that, in the separation in this way of the two contact plates, the device approaches somewhat closely to the one in suit. The idea, to a certain extent, may be said to be there; but there is a difference, amounting to a distinction, in developing it. In the Pass and Seymour the ends of the circuit wires are left in close proximity in the same chamber, with nothing but a low and narrow rib of porcelain intercepting them, which there is constant danger that the frayed strands may bridge over and short-circuit. But in the Perkins this is doubly prevented—first, by locating the contact plates at diametrically opposite sides of the blocks; and, second, by giving to each a separate recess or chamber therein. It is true that the wall between the chambers is slight, and that the imperfect contact of the upper and lower blocks leaves a small air space, which divides it; and in a badly fitted socket, like that produced by Mr. McIntire, this may be so great as to do away in great part with the benefit to be derived from this construction. But in the ordinary and proper form, made in accordance with the patent, the two-chamber feature has an important and distinctive function, which is not anticipated by anything to be found in the Pass and Seymour, any more than in the rest of the preceding art.

The patentability of the device, however, is questioned. The inventor, it is said, took a two-block socket, which was old (Hubbell), united the blocks with metal contact plates or standards on opposite sides, also old (Wirt), and then insulated the plates by an intermediate wall of porcelain—an expedient not only common, but expressly employed in the prior art (Pass and Seymour). But the merits of the invention, and the inventive skill involved, are not to be written down in any such way. The problem of providing an electric lamp socket which should be at the same time mechanically strong and easily handled, electrically safe, and commercially cheap, was by no means easy and obvious, as the many attempts at it, which have produced more than 300 patents in the last 20 years, abundantly show. An entire porcelain socket, such as the Pass and Seymour, has certain electrical advantages, but is bulky, liable to break when exposed to rough usage, and not readily connected up or handled. The use of metal, on the other hand, in cap, shell, and screw extension, while conducing to lightness and durability as well as strength and cheapness, detracts from it electrically. In the device in suit there is apparently a more complete solution of these difficulties than in anything which had preceded it, and, even though accomplished by the use of known expedients, the combination being a novel one, and the beneficial result obtained a substantial gain to the art, it must be regarded as involving the exercise of invention, such as the law was designed to protect. If not, then not only is this wanting in the other devices which have been put in evidence, which stand on no higher plane, but there would seem to be nothing further left that was patentable along existing lines in this branch of the electric art; and improvements therein must be relegated

to the unstimulated skill of the common artisan, rather than the genius of the inventor—a conclusion which we should be slow to reach.

It is further urged that the elements drawn together in the patent amount to a mere aggregation, but this loses sight of that which is involved. The object of the invention is the production of an electric lamp socket—an important commercial appliance, which, to meet the demands upon it, must have certain characteristics and qualities. It is necessarily made up of different parts, designed for different purposes, some of which contribute one thing, and some another. The cap, the shell, the upper and lower blocks, the insulating chambers, are nothing, apart and in themselves; but together they unite to form a complete socket, to be taken and used as a whole. This is not an aggregation of separate elements, each acting or standing by itself, but a composite construction in which the several parts co-operate to produce a common and combined result, which the law accepts and sustains.

Let a decree be drawn in the usual form in favor of the plaintiffs, and referring the case to a master to take an account, with costs.