UNDERWOOD TYPEWRITER CO. v. TYPEWRITER INSPECTION CO.

SAME v. E. C. STEARNS & CO.

(Circuit Court, S. D. New York. March 7, 1910.)

1. PATENTS (§ 240*)—INFRINGEMENT—IMPROVERS—"INFRINGER."

An improver on a patented device, although his improvement may be patentable of itself, is an "infringer," if he uses the specific device of the prior patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. § 240.*

· For other definitions, see Words and Phrases, vol. 4, p. 3594.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TYPEWRITERS.

The Wagner patents, No. 559,345 and No. 633,672, for typewriting machines, both relating to mechanism whereby the operator can set the machine so as to write part way only, or wholly, across the page, and on arriving at the stopping point the keys are automatically locked, and the latter also covering a device by which the operator by pressing a button can unlock the keys, if desired, for the purpose of adding one or more letters to the line, were not anticipated, and disclose invention, but are improvement patents merely, and are specific and of narrow scope. In view of such facts and of the limitations of the claims by the language employed, imposed by the Patent Office and acquiesced in to avoid references in the prior art, neither patent is infringed by the mechanism of the Schneelock patent, No. 852,400, which attains the same results but by different means.

In Equity. Suits by the Underwood Typewriter Company against the Typewriter Inspection Company and E. C. Stearns & Co., respectively. On final hearing. Decrees for defendants.

Briesen & Knauth (Arthur v. Briesen and Eugene Eble, of counsel), for complainant.

Alfred Wilkinson and Ernest W. Marshall, for defendants.

RAY, District Judge. The senior patent, No. 559,345, was issued April 28, 1896, on application filed October 4, 1894, to Franz X. Wagner, for typewriting machine. Claims 17, 18, 19, and 20 are in issue here, and read as follows:

"17. A paper-carriage and an actuating-key provided with a catch or shoulder located at the forward or power receiving portion of the key, combined with a forwardly-oscillating bar adapted to engage or lock said catch, a forwardly-oscillating actuating-arm for said bar normally free from said bar, and an actuating-shoulder for said arm, said carriage being provided with a lip adapted to engage said actuating-shoulder to actuate said arm, substantially as described.

"18. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, a swinging arm having its free end placed in proximity to and normally out of contact with the bar, a bell-hammer placed in advance of the bar in the path of the free end of the arm, and a lip on the carriage for actuating the arm so as to make its free end successively strike the bell-hammer and the bar, substantially as described.

"19. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, an actuating-arm for the bar, a rock-shaft for said arm, a shoulder on said rock-shaft, said carriage being provided with a lip adapted to engage the shoulder for actuating the shaft, and a bell-hammer provided with an inclined movable projection along which the arm rides in its

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forward stroke to actuate the bell-hammer, said arm on its return stroke being made to pass under or lift the projection independently of the bell-hammer, substantially as described.

"20. A paper-carriage and an actuating-key, combined with a bar adapted to engage or lock the key, an actuating-arm for the bar, a rock-shaft for said arm, a shoulder on said rock-shaft, a lip on the carriage for engaging the shoulder, and a bell-hammer actuated by said arm, said shoulder being step-shaped so as to be intermittently actuated by the carriage-lip for separately actuating the bell-hammer and the locking-bar, substantially as described."

The junior patent, No. 633,672, was issued September 26, 1899, on application filed July 7, 1897, for typewriting machine, to John T. Underwood, assignee of Wagner.  Claims 25, 27, and 28 are in issue, and read as follows:

"25. In a typewriter, the combination with a movable carriage, of a series of type-key levers each of which has a locking-catch thereon, a vibrating line-stop adapted to be vibrated by said carriage, a universal locking-bar adapted to engage the catches on the type-key levers to maintain the same against movement, intermediate mechanism between the vibrating line-stop and the universal locking-bar for automatically operating the locking-bar when the line-stop is vibrated and hand operated means for releasing the locking-bar from engagement with the type-key levers."

"27. In a typewriter, the combination with a movable carriage, of a series of type-key levers each of which has a locking-catch thereon, an adjustable vibrating line-stop adapted to be vibrated by said carriage, a spring-pressed universal locking-bar normally maintained out of the path of the locking-catches on the type-key levers, intermediate mechanism between the vibrating line-stop and the universal bar and a releasing-button connected with said universal bar to throw the same out of engagement after it has been automatically thrown into engagement by the line-stop."

"28. In a typewriter, the combination with a movable carriage, of a series of type-key levers each of which has a locking-catch thereon, a vibrating line-stop adapted to be vibrated by said carriage, bell-sounding mechanism adapted to be operated by said stop, a spring-pressed universal locking-bar maintained out of the path of the locking-catches on the type-key levers, intermediate mechanism between the vibrating line-stop and the universal bar to throw the same out of engagement after it has been automatically thrown into engagement by the line-stop without effecting an operation of the bell-sounding mechanism."

Claim 17 of the senior patent calls for:  (1) A paper-carriage; (2) an actuating-key provided with a catch or shoulder located at the forward or power receiving portion of the key; (3) a forwardly oscillating bar adapted to engage or lock said catch; (4) a forwardly oscillating actuating-arm for said bar normally free from said bar; (5) an actuating shoulder for said arm; and (6) a lip on the carriage, adapted to engage said actuating shoulder to actuate said arm.  The paper-carriage carries a lip which at a certain station of the carriage engages with the actuating-shoulder to move the same, this in turn causes an oscillation of the arm which moves a lock-bar into the catches in the power receiving portion of the keys, and this movement of the bar into the catches locks the keys.  Returning the carriage causes a reverse of these movements, and the keys are unlocked.  The actuating-arm is normally free from the locking-bar so that the locking-bar is not thrown into locking position the moment the actuating-arm begins to move, but at a later time, and this enables the actuating-arm to be an instrument in ringing the bell to warn the operator that the locking is about to take place and enable him to govern himself accordingly.

As I read claim 18, it is substantially the same, except that it adds the bell feature. Claim 19 has an arrangement or expedient whereby the end of the arm coacts with the bell-hammer so that the latter is raised and actuated when the arm is advancing but is not when the arm is returned. Claim 20 has a step-shaped shoulder so that it is intermittently actuated by the carriage lip for separately actuating the bell-hammer and the locking-bar. The lip on the carriage rides along the lower step of the shoulder and causes the actuating-arm to operate the bell-hammer and ring the bell, and then rides another step, causing the actuating-arm to move the locking-bar and lock the keys. The return is made without ringing the bell.

Claim 25, of the junior patent, has: (1) A movable carriage. (2) A series of type-key levers each having a locking-catch. (3) There is a universal locking-bar adapted to engage the catches on the levers and maintain the type levers against movement. (4) A vibrating line-stop adapted to be vibrated by the carriage. It comprises the lip on the carriage, the movable shoulder, the rock-bar carrying a vertically swinging arm, and other details. (5) Intermediate mechanism between the vibrating line-stop and the universal locking-bar for automatically operating the locking-bar when the line-stop is vibrated. (6) Hand operated means for releasing the locking-bar from engagement with the type-key levers.

The universal, locking-bar is not to be confounded with the "universal bar" of a typewriter. The former has the hooks or catches, and its function is to lock the type keys and prevent further depression thereof and movement of the carriage, while the main office or function of the "universal bar" is to cause the escapement mechanism which advances the carriage to operate and advance the carriage one space each time a key is depressed.

I will not describe the elements of each claim, as I think it unnecessary. The mechanism of the claims of both patents is blended in the Underwood machine with some changes of detail, etc., which do not change results or the mode of operation. The claims cover an operative structure in a typewriter, or an operative added structure, whereby the operator can set the machine so as to write part way only, or wholly, across the page, and on arriving at the stopping point the keys (being then locked) are no longer depressed by striking the keys, and there is not a succession of blows struck by the type on the paper at a single point, and there is no strain on the machine. By pressing a key or knob, the keys are unlocked, so that, if it is desirable to add one, two, or three letters to the last word written, it may easily and speedily be done, and on releasing the key or knob the locking-bar resumes its locked position and retains it until the carriage is returned to its first position. Utility and novelty cannot successfully be denied. A bell is rung to warn the operator that he is about to reach the locking point, as has been stated.

I cannot doubt the validity of these patents. Consulting the prior art I do not find anticipation. Attempts had been made in this direction, but I find no proof that they had been successful. The defendants claim that their construction differs so essentially from the devices of the patents in suit, and that such patents, in view of the prior art

and the file wrapper of the senior patent, are so limited, that infringement is not established.

A patent may be limited to the specific means described. A wide or a narrow range of equivalents is allowable, depending on the case. Infringement is established when substantially the same result is accomplished by substantially the same means operating in substantially the same way.

As to the senior patent in suit, No. 559,345, the defendant says:

"As the 'actuating-arm' or the 'swinging-arm' of this patent is an element of all of the four claims at issue, and as defendant's machine has not got that element of the claims, nor any actuating-arm in the sense of this patent, we will base our defense squarely on that fact," etc.

One element of claim 17 is, as seen:

"A forwardly-oscillating actuating-arm for said bar normally free from said bar, and an actuating-shoulder for said arm, said carriage being provided with a lip adapted to engage said actuating-shoulder to actuate said arm, substantially as described."

The forwardly oscillating bar is the universal locking-bar before referred to.

The defendant claims that the Patent Office refused to allow the claim as originally presented, and that prior to and as a condition of allowance four limitations were imposed, viz: (1) The catch or shoulder located at the forward or power receiving portion of the key; (2) the fact that the locking-bar is forwardly oscillating; (3) the fact that the actuating-arm for said bar is forwardly oscillating; and (4) is normally free from said bar.

Claim 33 of the application as filed became claim 17, and read as follows:

"A paper-carriage and an actuating-key combined with a bar adapted to engage or lock the key, an actuating-arm for the bar, a rock-shaft for said arm, and a shoulder on said rock-shaft, said carriage being provided with a lip adapted to engage the shoulder for actuating the shaft, substantially as described."

In this the catch for the key was not mentioned, nor was it specified that the locking-bar oscillated forwardly to engage the keys, nor that the arm moved forwardly to push the locking-bar forward into the locking position. Neither was it mentioned that the arm was normally free from the bar. This original claim 33 was rejected on Clark, No. 500,798, of July 4, 1893, and Cress, No. 510,409, of December 12, 1893, for typewriting machines. It is self-evident that the changes made limit the claims; but I do not think the limitations go to the extent of confining the complainant to the precise and specific devices shown or to devices, arms, etc., which move precisely as indicated, so that others may use substantially the same elements, operating under and in accordance with the same laws to produce the same results, but avoid infringement if they change the form or direction of movement. However, there is no element of a pioneer invention found in the patents in suit. These patents are improvements merely in this particular branch or part of the typewriter mechanism.

In the senior patent I do not find any means provided for unlocking

the keys, when once locked, so as to permit the adding of one or two or more letters and permit the completion of a word or of a syllable at the end of a line. Means for doing this were provided in the junior patent. However, the operator could do this with the mechanism of the senior patent but only by a dilatory process, viz., by sliding or moving the cam on the rock-shaft, then adding the letters, and then resetting the cam. I am unable to agree with the defendant's contention that it could not be done at all, and that the only remedy, in case of an indivisible word partly printed at the end of the line, was to erase it and commence the word on the new line. This, however, was a serious defect in the utility of the device of the senior patent, but did not make it inoperative.

Claims 19 and 20 of the senior patent bring in the rock-shaft, which, when rocked, moves the arm which moves the locking-bar. Rocking it in one direction causes the downwardly extending arm attached thereto to move, swing, or push forward towards the operator and push the locking-bar into locking position, while moving it in the opposite direction causes the downwardly extending arm to recede, and this allows the locking-bar to fall back out of locking position; that is, to become disengaged from the keys. A mere change or mere changes in mechanical construction which would lock the keys by a backward movement of the locking-bar and unlock by a forward movement, the downwardly extending arm being so arranged with the rock-shaft as to move correspondingly, would not, in my judgment, avoid infringement. All the elements of the combination would remain and, aside from mere direction of movement, would operate in substantially the same way to produce the same result.

If it be true that the defendant's mechanism or device, alleged to infringe, does not have the actuating-arm, arm for moving the locking-bar into locking position, or an allowable equivalent, I do not see how infringement is made out. The junior patent is a substantial duplication of the senior patent with the bell feature or element, old in the art, added. We will, therefore, ascertain, if possible, what elements are contained or found in the defendant Stearns' machine, so far as the features in question here are concerned.

It is said by the defendant Stearns & Co. that it is manufacturing, and by defendant Typewriter Inspection Company that it is selling, a machine made under and in accordance with the Schneelock patent, No. 852,400, dated April 30, 1907, and issued on application filed May 9, 1902, divided and this application filed October 9, 1902. This Schneelock patent says:

"My invention relates to the line-locking mechanism of a typewriting machine, by which the carriage may be automatically locked at any desired point, the operator is previously warned thereof, and the keys are also locked when the carriage is stopped."

The front bar of the carriage frame is provided with a groove and a rack and a top piece with a corresponding groove into which are fitted two sliding pieces. To one of these sliding pieces is hung a pawl (No. 1), and it is also provided with a spring dog held in engagement with the rack by its spring and is provided with a thumb piece for releasing it therefrom, so that said sliding piece may be locked to the

rack at any desired point. The stroke of this swinging pawl is limited by stop pins. The other sliding piece mentioned is provided with a similar spring pawl (No. 2) and a spring and thumb piece, whereby it may be locked in any desired position, and it carries also a swinging stop limited in its stroke by means of a pin engaging in its slotted end, whereby a slight movement is obtained preventing a sudden jar or rebounding when it engages with an abutment, 88, on a lever yet to be mentioned. This stop engages with said abutment and limits the movement of the carriage when it is moved back to the left. This lever is journaled to the frame and provided with two cam surfaces, or steps, and the abutment before mentioned. The first pawl (No. 1), as the carriage moves, engages with the first or lower cam face, or step, attached to the lever, and presses this end of the lever downwardly, lifting the other end and also an arm or rod attached thereto, called, in the patent, "connecting bar 89," and this operates to ring the warning bell. This pawl, as the carriage advances, next travels over the straight face or next step of the cam surface and engages with the next step, called "cam 87," and still further depresses the first end of the lever and correspondingly elevates the other end and consequently still further lifts the said "connecting bar 89." The carriage is stopped at this point as pawl (No. 1) engages with abutment 88 before mentioned, and operates on certain mechanism now to be mentioned. If defendant's machine has the "actuating-arm," or arm for moving the locking-bar into locking position, it is this "connecting bar 89" of the Schneelock patent.

The lever before mentioned, which carries the cam and abutment before mentioned on its inner end and is connected to the connecting bar 89, at its outer end, is connected by such bar to one end of the bell lever, near the bottom part of the machine, which bell lever is journaled to the frame of the machine by a screw, and carrying on its lower arm a pivoted dog so adjusted that as the said connecting arm is raised, as before mentioned, it will engage with a pin on the outer end of the bell-hammer lever, journaled, and rock it against the force of a spring, and then release it, and so ring a bell. This is done when pawl (No. 1) engages with the first step of the cam surface attached to the inner end of lever 80, before mentioned.

Coming now to the means for and mode of locking and unlocking the operating keys of the machine, we find in the specifications of the Schneelock patent the following:

"To the lower arm of bell lever, 92, is pivotally connected sliding lever, 63, so that when pawl, 78, engages with cam surface, 87, connecting rod, 89, is further raised, and pin, 62, on sliding lever, 63, is moved forward to engage with the tail, 64, pivotally supported on extension 65 at 66, and there held in position by spring, 71, limited in its movement by lug, 91, which is integral with the tail, 64. This extension is secured on rod, 68, journaled in the frame, and carrying the locking levers, 67, supporting locking rod, 70, for engagement with key-lever catches, 69, and held back by a weaker spring, 102."

We have here abundant room for the play of the imagination; but I assume that when pawl (No. 1) 78 engages with abutment 88, being on cam 87, and the outer end of lever 80 is raised so as to lift connecting bar 89 and the pin on the sliding lever is moved forward so as to

engage the tail pivotally supported on the extension and there held in position by a spring limited in its movements by a lug which.is integral with the tail, and which extension is secured on a rod journaled in the frame and extending from one side of the machine to the other, and which rod carries a locking lever at each end which support a locking rod, parallel with the rod carrying the locking levers, for engagement with the catches on the key levers, and which is held back by a weaker spring, that the said rod journaled in the frame, and which carries the locking levers which support the locking rod, moves or turns backward and carries the locking rod into engagement with the hooks or catches on the key levers and so locks the keys, or that the locking levers turn on the rod. In this structure the lever, 80, journaled to the frame, carries the cam having steps, onto which the apparatus affixed to the carriage rides, thereby depressing one end of the lever and elevating the other end and drawing up a rod or arm, whereby the locking levers of the key-locking apparatus are moved so as to throw the upper or locking rod backward into the hooks and lock the keys. In the complainant's structure, there is a rod journaled in the frame which carries the cam having steps onto which the apparatus affixed to the carriage rides, whereby the cam is pressed downward, and, as the arm extending therefrom or connected thereto cannot be depressed (that is, pushed downward as it is fixed to the rod first mentioned and turns thereon) it (said arm) oscillates at its lower end (that is, moves back and forth), and, when it comes in contact therewith, pushes the locking bar or rod into locking position. The lower end of this arm is free so as to enable it to actuate the bell before actuating the locking-bar. If not attached to the rod carrying the cam, this arm would be pushed downward, and by attaching it to the lower rod of the locking frame of complainant's structure, by means of a lever, it could, on the cam structure being depressed, actuate such lever and throw the locking-bar into locking position. I fail to find any difference in principle between the two structures. There is considerable difference in the mechanism, but this is owing largely, if not entirely, to the change of location of parts and the necessary modifications and changes in mechanical structure. It should be mentioned that the junior patent of the complainant, No. 633,672, calls for "a spring-pressed universal locking-bar, normally maintained out of the path of the locking-catches," and that this feature is found in the defendant's machine.

We are brought back to the question of the limitation of complainant's claims. Is complainant limited to a locking-bar which is moved forward into locking position and to a forwardly actuating-arm for said bar which is normally free from the locking-bar?

I have examined the Williams patent, No. 16,488, of 1892, which shows that the idea of locking the keys, providing a bell, and arranging the mechanism so as to permit the addition of one or more letters at the end of a line, was old. We have also the Cress, the Clark, the Clinton and MacNamara, and Spiro patents. These, or most of them, were cited as references when the original Wagner claims were submitted and rejected. Wagner made the claims in issue, and the wording must be regarded as his. Claim 18 calls for a "swinging arm having its free end placed in proximity to and normally out of contact

with the bar" (locking-bar), and the "free end" of this "swinging arm" actuated by the lip on the carriage is to successively strike the bell-hammer placed in advance of the bar "in the path of the free end of the arm," and then the bar. It seems to me that these are words of limitation and restriction which cannot be disregarded. Their force and effect must have been appreciated by the applicants, and certainly were by the Patent Office, for it was after their insertion that the claims were allowed. They cannot be regarded as merely descriptive. The Wagners entered the field of improvement, as did Schneelock.

I think it must be considered that each improved on the prior art, and that defendants followed one line of advance in the art, while the complainant followed another. A lock rod or bar—it is immaterial what name we apply—engaging all the keys and locking them was used in 1892, as we have seen. It was actuated and put in locking position by engagement with the carriage. The bell was also an old feature, and, aside from the combination, was not patentable. The Merritt patent, applied for May 29, 1894, has a locking-bar, a bell, and hooks on the keys. It also provides for a release to permit the addition of letters at the end of a line. The Wagner junior patent was not the first to provide means for unlocking the keys so as to permit the addition of letters at the end of the line. The device of the junior patent in this respect, while, I think, patentable as an element of a combination, is clearly different from that of the defendant's device. In the one case the locking-bar is pushed back out of engagement with the hooks by main strength and held there by the hand while the additional characters are printed, while in defendant's a releasing-button operates to remove from action that part of the mechanism which presses the locking-bar into locked position so that it no longer engages to keep the locking-bar, in locking position, and, by means of a spring, the locking-bar is at once restored, on pushing the button, to its normal or unlocked position. Defendant improves, in this respect, on both the complainant's machine and the prior art. In actual construction of this feature, the complainant does not follow the Wagner patent. This fact does not show that the claim is void, but it throws light on the question of infringement. I am not able to say that the rock-shaft with its shoulder and arm extending downwardly to engage the bar adapted to engage the hooks and lock the keys, said downwardly extending and forwardly moving arm being free at its lower end so as to first ring the bell and then actuate the locking-bar as it moves forward under pressure on the shoulder of the rock-shaft, is the well-known equivalent of the above-described mechanism of the defendant's device or mechanism performing the same function, or functions; that is, the ringing of the bell and the locking of the keys. As stated, Wagner, or the Wagners, were not pioneers, but mere improvers, and improvers with several prior patents ahead of them designed to accomplish the same purpose. I cannot say that such prior patents were inoperative or void. They were far from perfect and quite inferior to the devices now in use to accomplish the results then aimed at and desirable to be attained. Self-imposed limitations cannot be disregarded. I find nothing in the specifications of the senior patent that in any way suggests a different structure. They say:

"The carriage, 21, is provided. as shown, with an index, 99, traveling over scale-plate, 100, and said carriage also has a lip, 101 (Fig. 1) which, when the carriage nears the end of its forward travel, will first press on shoulder, E, and then on the somewhat higher shoulder, E', said shoulders being formed by a step-shaped piece or lug secured to rock-shaft, 102, journaled·in frame, 1. To this rock-shaft, 102, is fixed an arm, 103 (Fig. 7), normally held or swung back by spring, 104; but when the carriage has passed far enough forward for its lip, 101. to press on shoulder, E, the arm, 103, has been swung far enough forward for its free end or the pin, 105, at said end to have passed over the forward end of bell-hammer lever, 106, thus first raising said hammer and then allowing it to drop for sounding bell, 107, whereby ·the approach of the end of a line is announced, as known.  Passing to the limit of its forward travel, the carriage will bring its lip, 101, over the higher shoulder, E', so as to rock the shaft, 102, for swinging arm, 105, farther forward into contact with lip, 108, projecting from the locking bar or rod, 109, supported on swinging arms, 110, carried by shaft, 111, supported by frame, 1.  The bar, 109, being thus swung forward by the extreme forward swing of arm, 103, said bar, 109, will catch or come to rest under the hooks, 112, projecting from the type-keys 2, thereby locking said type-keys against further action until by the setting back of the carriage·the shoulders, E E', with rock-shaft, 102, and arm, 103, are free to be swung back by spring, 104."

I think the claims in issue call for a forwardly swinging arm having one end free to engage and carry forward and hold the locking bar or rod under the hooks, and consequently in locking position.  This is not the mode of operation of the defendant's device.  I do not think the court is at liberty to rewrite the claims.  We may construe the language used, but it is not admissible to so change or broaden a narrow claim written by one improver in a somewhat crowded art as to cover the claims of another patent granted another improver in the same field.  Every valid patent is entitled to protection against infringement, but infringement must be proved.  It is well settled that one may have an improvement on a patented device, which improvement is of itself patentable; but that such improver is not entitled to use the patented device with the improvement added.  If the improver uses the specific device of the prior patent, he is an infringer.  Thomson-Houston El. Co. v. Ohio Brass Co. (C. C.) 130 Fed. 549; Perkins Elec. Switch Co. v. Buchanan (C. C.) 129 Fed. 135.

So the splitting up or duplication of parts, or additions, do not avoid infringement when the patented device is used.  So the fact that defendant constructs its machine in strict accordance with the Schneelock patent is no defense if infringement actually appears.  It is presumed that there is a patentable difference, but it is for the court to say.  Here the claims of the patents in suit are specific and narrow.  The claims of the Schneelock patent are also specific and narrow.  Both aimed at the same results, and both attained the results aimed at, but by different means—different combinations of mechanical appliances operating in different ways.  As before said, the general principles of operation are the same.  The carriage is made to ride a cam on a rock-shaft in the one case and on a cam-surface lever in the other.  The object is to throw a locking rod into hooks on the keys and prevent their depression by the operator.  In the one case the locking rod is pushed forward by the free end of a forwardly oscillating bar, moved, by the rocking of the rock-shaft, into engagement with such hooks.  In the other case the one end ·of the cam-surface lever is depressed by the carriage,

thereby elevating the other end and lifting a bar, neither end of which is free, and this operates a bell-crank lever and a sliding bar to which it is attached, and thereby throws the locking rod backward into engagement with the hooks on the keys. The mechanism for unlocking operates on the same general principle in both cases, but the means employed for all this as well as for sounding the bell are very different.

In view of the prior art and the limitation of the claims by the language employed, and which limitations were imposed by the Patent Office and acquiesced in for the purpose of obtaining the patents in suit, I am constrained to hold that infringement is not established.

There will be a decree dismissing the bill, with costs.