### ELDRED v. KIRKLAND.

(Circuit Court of Appeals, Second Circuit. April 19, 1904.)

#### No. 192.

1. PATENTS—VALIDITY AND INFRINGEMENT—CIGAR LIGHTERS.

The Chambers patent, No. 492,913, for an electric lamp lighter, covers the first successful device by which a fluid-burning cigar lighter is ignited automatically by electricity and automatically extinguished, and was not anticipated; and while not a broad invention, the device is novel and useful, and the claims are entitled to a construction sufficiently liberal to give the inventor the benefit of well-known equivalents. Claim 1 is invalid, as too broad, in terms covering prior devices; but claims 5 and 10 are valid, and are infringed by a lighter made in accordance with the Gruhlke & Kessler patent, No. 562,395, the Kessler patent, No. 598,489, and the Gruhlke patent, No. 628,982.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This is an appeal from a decree of the Circuit Court for the Northern District of New York holding letters patent No. 492,913, for an electric lamp lighter, invalid, and dismissing the bill, with costs. The opinion below is reported in 124 Fed. 553. The patent was considered by the Circuit Court of Appeals for the Seventh Circuit in Eldred v. Kessler, 106 Fed. 509, 45 C. C. A. 454, where the specification and claims are set out in hæc verba. The court held that the patent must be limited to the precise construction shown and described, and, as so limited, the defendant's lighter, which is the same device in controversy in the case at bar, did not infringe.

Louis K. Gillson and Charles C. Linthicum (Clifford E. Dunn, of counsel), for appellant.

Stem, Heidman & Mehlhope, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The complainant is the owner of letters patent No. 492,913, granted to Josephus C. Chambers, March 7, 1893, for an improvement in electric lamp lighters. The bill, in the usual form, prays for an injunction and an accounting. The answer interposes the familiar defenses of lack of novelty and invention and noninfringement.

The patent is for an electrically ignited fluid-burning wick lamp, intended for use as a cigar lighter and so arranged as to be lighted and extinguished automatically. The poles of an electric circuit are arranged adjacent to the end of the lamp to be lighted, the circuit being normally open. The breaking of the circuit produces an electric spark to ignite the lamp. When the lamp is not in use the wick is inclosed and covered by an open-sided hood, arranged at the upper extremity of a pivotally mounted arm having an operating handle at its lower end. By moving this arm upon its fulcrum, the wire point of the electrode mounted on the arm is brought first into contact with the metal of the lamp adjacent to the wick thereby completing the electric circuit. As the arm continues to be moved farther the wire point is disconnected from the lamp and produces an electric spark adjacent to the wick which lights it. When the user has lighted his cigar he releases his hold upon the handle and the arm returns to its normal position, out of electrical connection with the lamp, bringing the insulating cap and the extinguisher into position to extinguish the lamp. The device is provided with a battery of its own and can be used in small hamlets where there is neither gas nor electricity.

The claims involved are the first, fifth and tenth. They are as follows:

"(1) In an electrical lamp-lighter, the combination, with a lamp, the burner of which is formed into or provided with an electrode, an extinguisher formed into or provided with the opposite electrode, and means for establishing and breaking the electrical connection between said electrodes, substantially as set forth."

"(5) In an electrical lamp-lighter, the combination, with a lamp, the burner of which is formed into or provided with an electrode, an arm pivotally secured adjacent to the lamp, one end of which is provided with an extinguisher, and an electrode, and means for automatically returning the arm to extinguish the light, substantially as set forth."

"(10) In an electric lamp-lighter, a lamp, a support therefor, an arm led into proximity to the lamp, provided with an extinguisher, an electric circuit having its electrodes at the adjacent portions of the arm and lamp, said arm and lamp the one movable in relation to the other to close said circuit to ignite the lamp, and self retracting to extinguish the lamp, said circuit being normally open, substantially as described."

In discussing the prior art we deem it unnecessary to consider all the patents pleaded in the answer or even all of those referred to by the experts, for the reason that it is agreed by counsel and experts alike that the three which approximate most closely to the invention of Chambers are the patents to Eastman, granted August 30, 1892; Hen & Weinmann, granted May 1, 1888, and Kronenberg, granted March 12, 1889. If these patents do not anticipate or fatally limit the claims it is manifest that the other patents segregated or combined will not operate to do so.

The Eastman patent shows a self-lighting lamp, which consists of a tube corresponding in cross-section with the interior of a sheath, which holds the lamp, and is provided at its lower end with an extinguisher, which fits over the end of the burner when the lamp is at rest. The sheath is mounted upon a base at an angle of, approximately, 20 degrees, there being insufficient slope to enable the lamp to slide into place. Each time it is removed it must be shoved home by the hand of the user. The flame is electrically produced by the act of taking the lamp from its sheath and is extinguished by returning it thereto. The wick is ignited automatically by making and breaking contact with an electrode mounted on an arm which extends up and over the sheath in the line of travel of the wick tube; in all other respects the device is operated manually. The user withdraws the lamp completely from the sheath and carries it to the end of the cigar. If he be a prudent and careful person he will insert it again in the sheath and push it into place. If, on the other hand, he be thoughtless or stupid he is quite likely to place the lamp, still burning, in some other position with the probability that disastrous results will follow. If he simply releases his grasp, as in the Chambers device, the lamp will drop to the floor. It cannot be successfully contended that the Eastman torch is self-extinguishing. The apparatus in this respect is no more automatic than if a cup of water were provided and the user were instructed to put out the flame by thrusting the end of the torch into the water. Indeed, the manual action resembles that required in using the tapers so long in vogue where the alcohol flame was smothered by returning the taper to its holding tube and dropping it into place. The extinguisher consists of a flat plate, instead of an open-sided cap, which would, in all probability, bat down the wick and render the lamp useless after a few trials. Eastman shows the nearest approach to the device of the patent in suit. He and Chambers both had the same idea in mind, namely, the production of a self-igniting and self-extinguishing cigar lighter. Chambers succeeded. Eastman failed. The one produced a lamp having both these characteristics. The other a lamp having but one. Instead of anticipating, or seriously limiting the scope of the patent, Eastman offers mute but persuasive tribute to Chambers' skill and ingenuity. Had he hit upon some plan by which his torch could be returned automatically to an open-sided cap extinguisher he would have secured the prize. "In the law of patents it is the last step that wins." Eastman failed to take it.

The Hen & Weinmann patent discloses an electric igniting apparatus in which a small wick saturated with alcohol is ignited automatically by the rubbing of the wick holder against an electric brush when the lamp is removed from its socket. There can be no doubt that in this, as in the Eastman and Chambers patents, the lamp is lighted automatically by an electric spark produced by, substantially, similar apparatus. In other respects, though operating upon the principle of the Eastman device, it is apparently less serviceable and convenient. It has all of the defects of the Eastman lamp in addition to others peculiar to itself. It has none of the typical advantages of the Chambers device. It is sustained in a vertical position by a

bracket, the lamp being placed in its holder manually and held there by a spring. Should the spring cease to press against it the lamp would drop out. When removed from its holder the lamp, like Eastman's, can be carried wherever desired and laid down anywhere. The intention of the patentees, however, is that when no longer required for use it shall be returned to the holder by pushing it in from the bottom until the extremity of the wick tube passes into the extinguisher at the top of the holder which thus extinguishes the flame. There is nothing about the lamp to convey this intention to the user, who would be quite likely to throw it aside where it might communicate fire to contiguous objects. If he understood that he was expected to return the lamp to the holder he had no means of knowing that he was to push it in until the burner entered the extinguishing cap. Failure in this regard would result in the temporary or permanent impairment of the apparatus. The Hen & Weinmann structure has no pivotal connection between the burner and the extinguisher and no means of any kind for automatically extinguishing the lamp.

Kronenberg invented an "electric gas lighter" and, of course, the problems with which he had to deal differ essentially from those which we are considering. The object of the inventor was to provide means for completely turning off the gas at the ignitor jet, and to adapt such means so as to turn on the gas in the act of lifting the device to or near the mouth of the user. When thus ready for use the gas is lighted by electric sparks and is turned off when the device assumes its normal position. The only feature which resembles any part of the Chambers structure is the vibrating lever which suggests the "Arm F" of the patent in suit, but in function, operation and result the two are essentially different. No amount of mechanical skill could make the lever of the Kronenberg patent do the work of the pivoted arm of the Chambers patent.

The record discloses no material feature of the prior art which is not found in the three patents considered. These patents are typical of the pre-existing situation and we fail to find there the combination of the Chambers patent; we fail to find a fluid burning cigar lighter, ignited automatically by electricity and automatically extinguished. The Chambers lighter occupies a field narrow and circumscribed it is true, but still one that has never been occupied before. Chambers has provided a self-igniting and self-extinguishing lighter which produces the desired flame, extinguishes it the moment the cigar is lighted and remains in economical and harmless inactivity until again needed; these results being accomplished by a single movement of the user's hand. He has not made a great invention or a "pioneer invention," if that much abused expression be confined to its legitimate meaning, but he has produced a novel and useful device which is far removed from mere mechanical skill. His invention belongs to that vast field of minor achievement which has given this country its acknowledged pre-eminence and which it is the policy of the patent law to protect.

The question of infringement remains.

The first claim is too broad; it can be read on the Eastman and Hen & Weinmann devices. This was admitted by the complainant's expert. He says:

"I am free to admit, however, that the naked terms of claim 1 of the Chambers patent do not clearly distinguish its construction from that of the Hen & Weinmann patent, or, in other words, that it is necessary to read the claim in the light of the specification and consider that the elements enumerated must be of substantially the character described in the specification and shown in the drawing of the Chambers patent in order to distinguish the combination of this claim from the device shown by Hen & Weinmann."

The admission is creditable to the witness for it is in exact accordance with the facts and saves unnecessary discussion.

The fifth claim is for the combination, in an electrical lamp lighter, of the following elements:

First.—A lamp the burner of which is formed into or provided with an electrode.

Second.—An arm pivotally secured adjacent to the lamp.

Third.—An extinguisher and an electrode at one end of the arm.

Fourth.—Means for automatically returning the arm for extinguishing the light.

The tenth claim is for the combination, in an electric lamp lighter, of the following elements:

First.—A lamp.

Second.—A support for the lamp.

Third.—An arm led into proximity to the lamp provided with an extinguisher.

Fourth.—An electric circuit having its electrodes at the adjacent portions of the arm and lamp.

Fifth.—Said arm and lamp, the one movable in relation to the other, to close said circuit to ignite the lamp and self retracing to extinguish the lamp, the circuit being normally open.

The defendant is using a device made under patents No. 562,395, granted to Gruhlke and Kessler June 23, 1896, No. 598,489, granted to W. F. Kessler February 1, 1898, and No. 628,982, granted to A. C. Gruhlke July 18, 1899. The infringing lighter, made in substantial compliance with the directions of these patents and particularly the latter, contains all the elements of the fifth and tenth claims as above specified. This proposition is too obvious to require discussion and is not seriously disputed. The defense of noninfringement is established only by limiting the claims to the mechanism described and shown, thus denying to the complainant the right to hold even the plainest equivalents. In the defendant's structure the lamp moves pivotally and the extinguisher is stationary. In the Chambers structure the lamp is stationary and the extinguisher moves. The one is the exact equivalent of the other even if the alternative construction were not pointed out in the specification, as it is. The lower portion of the tubular arm in the defendant's structure is cut away to receive the nozzle of the lamp and smother the flame without batting down the wick; its operation, in effect, is the same as that of the open-sided hood of the patent. It is argued that there is nothing in the description or claims calling for such an extinguisher and that the

"open-sided housing or hood" is the invention not of Chambers but of the complainant's expert. It is true that the words quoted are employed by the expert as aptly describing the part which is described as "a cap and its extension acting as an extinguisher." The open-sided feature is plainly shown in the drawings and the operation of the parts is such that the caps of the prior art could not be utilized. It is this structure, by whatever name it is designated, which is the "extinguisher" of claims 5 and 10, and this is the "extinguisher" which the defendant has appropriated.

As in most combination claims the separate elements can be found in the prior art, but this is of no moment if the combination be new, as it is in the present instance. We do not think the complainant is entitled to a broad construction of the claims in issue, but we do think the claims should receive an interpretation sufficiently liberal to give him the benefit of well-known equivalents, such, for instance, as the substitution of a weight for a spring and one form of support for another.

The judge of the Circuit Court naturally and properly followed the decision of the Circuit Court of Appeals for the Seventh Circuit. That decision is entitled to the greatest respect, but we are reluctantly constrained to a different conclusion. The court says:

"The Eastman patent was granted for an 'electric cigar-lighting lamp,' and shows a fluid-burning device which differs in form from that of Chambers, but is equally automatic in lighting and extinguishing by electricity,—closely resembling the Hen & Weinmann device, except for this dual feature."

If we were able to concur in this interpretation of the Eastman patent we would have no difficulty in reaching a similar conclusion, but for the reasons heretofore stated we are compelled to take a very different view of its scope and meaning. In none of the devices shown, including Chambers', is a fluid burner extinguished by electricity and in Eastman's the extinguishing is not automatic but manual. This proposition was not disputed at the argument and it is not disputed in the defendant's brief. Had it appeared to the satisfaction of the court in the Kessler case that Chambers was the first to produce a fluid burner not only ignited automatically but automatically extinguished as well, it is not improbable that a different conclusion would have been reached.

The decree is reversed, with costs, and the cause is remanded to the Circuit Court with instructions to enter the usual decree, upon the fifth and tenth claims, in favor of the complainant.