AMERICAN THERMOS BOTTLE CO. v. VACUUM SPECIALTY CO.

(Circuit Court of Appeals, Second Circuit.   April 4, 1910.)

No. 189.

PATENTS (§ 234*)—INFRINGEMENT—THERMOS BOTTLES.

The Burger patent, No. 884,567, for an improvement in double-walled vessels, which consists of spacing blocks of yielding nonconducting material placed between the inner and outer walls of a thermos bottle, "held permanently in position by friction only," held not infringed by blocks cemented to one of the walls.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 370; Dec. Dig. § 234.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the American Thermos Bottle Company against the Vacuum Specialty Company.   Decree for 'defendant, and complainant appeals.   Affirmed.

This cause comes here upon appeal from a decree dismissing the bill in a suit brought to restrain infringement of letters patent No. 884,567, granted April 14, 1908, to R. Burger for improvement in double-walled vessels.   The opinion of the Circuit Judge is found in 171 Fed. 670.

Alfred Wilkinson (Park Benjamin, of counsel), for appellant.
Hillary C. Messimer, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge.   Complainant is the owner of patents for the well-known "Thermos" bottle, which consists of two glass bottles, one within the other and united only at their mouths.   The space between the walls is exhausted of air, and thus becomes a means of heat insulation, so that the contents of the bottle may be kept at their initial temperature, whether hot or cold, much longer than is possible in an ordinary single-walled vessel.   As the two walls are united only at the mouth of the bottle, it is obvious that at that point the glass is liable to rupture when the bottle is turned on its side, for then the whole weight of the contents at considerable leverage is there supported. So, also, similar rupture may occur through chance lateral shocks, even when the bottle is held upright, due to the tendency of the inner vessel to swing.   This difficulty is corrected by placing in the vacuum space between the walls, and a little distance above the bottom of the inner bottle, spacing blocks of yielding nonconducting material which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

act as supports, or "stiffening devices," as the patent expresses it, thus preventing breakage of the glass at the mouth. This succinct description of the Thermos bottle is substantially from appellant's brief.

The Circuit Court held that the particular device covered by the claims sued upon was not infringed. In the reasoning and conclusion of Judge Noyes we fully concur. It will be sufficient to answer briefly the criticism of the opinion which is found in appellant's brief.

It may very well be that the bottle devised by Burger embodied a highly meritorious invention. We do not find in the prior art any anticipation of this closed, compact, convenient, efficient, and easily portable vessel for preserving the temperature of small portions of liquid. We might almost take judicial notice of the fact that some such vessel has been long desired. Presumably inventors have tried to devise one because it must have been self-evident that a really efficient bottle of this sort would meet a general public want. The evidence shows that Burger's bottle at once commanded a ready market. For anything that appears in the record here, he was a pioneer, and might have protected himself by a patent which would be entitled to receive a broad construction. But in this suit we are not dealing with the main patent, but only with the third in series covering a specified improvement. The first patent showed the double-walled vacuum bottle constructed as above set forth, with supporting devices of asbestos board arranged to remain in place by the use of wire rings and vertical wires. In the second patent these supporting devices are held in position by projections or recesses provided in one or both of the walls which inclose the vacuum. The specification of the patent in suit states that the invention has for its object to provide a novel device for spacing the inner and outer portions of the vessel apart. It relates solely to the stiffening or supporting "blocks of yielding nonconducting material." such as asbestos, and is confined to such blocks "held permanently in position by friction only, and without special holding means provided therefor, either on the walls of the inner or outer portions or otherwise." Each of the claims sued on (1 and 2) is in terms restricted to spacing devices supported in position "wholly by frictional contact." Manifestly spacing devices which are held in position otherwise than by frictional contact are not within the claim, nor are such devices within it when some other cause than frictional contact substantially contributes to maintain them in place.

The Circuit Court found that in defendant's structure the supporting blocks are cemented to the outer vertical wall of the inner vessel. The record supports that finding. The blocks are cemented to the outside of the inner vessel, which is thereafter inserted in place, and the adhesion resulting from this method of applying either alone holds them in place or substantially contributes so to hold them. The theory was advanced in the court below that when a label is cemented to the outside of a glass bottle it remains in position solely by friction. The expert who so testified admitted on cross-examination that:

"If the force applied tending to remove the [label] is one parallel to the surface of the bottle [as it would be when the bottle is standing upright], that force will be opposed by friction only. If the force applied tends to remove the label perpendicularly from the bottle [as it would if the bottle were held horizontally with the label down], friction will play no part."

Of this the Circuit Court said:

> "This theory may be scientifically correct; but it involves too strained an interpretation of the words 'frictional contact' to be adopted in construing the claims. In language in common use, an article cemented to a wall is held in place by the cement, and not by friction."

Appellant's counsel devotes several pages to a criticism of this statement contending that the only "language in common use" which is to be referred to in construing patents is the language in use among persons skilled in the art, and, if the art involves the application of principles of science, the language in use among physicists, "should," he says, "the *mis*understanding of the man in the street be substituted for the understanding of the person skilled in the art? The facts of physical science, even the simplest, may seem 'strained' to people unaccustomed to them." And he contends that therefore the phrase "supported wholly by frictional contact" should be construed as his expert defines it. The difficulty with this argument is that we do not know that this definition is part of the language in use among persons skilled in the art and physicists. A physicist from a distinguished university says that it is; but another physicist from another distinguished university says that it is not— that in the case of the bottle and the label it would be "misleading to describe the effect of cement as increasing friction and as acting by virtue of friction." When this is all the enlightenment afforded as to the language in common use among "physicists" and "persons skilled in the art," there seems nothing left for a court to do but exercise common sense, even though it be of the commonest kind. So far as anything in this record discloses, we should suppose that a skilled maker of bottles of this sort, who wished to conform his product strictly to the device of the patent, would be very careful to avoid the use of cement between the blocks and either wall, lest thereby he might produce an adhesion between the two which might operate to retain the blocks in place not wholly by frictional contact.

The decree is affirmed, with costs.