## KRYPTOK CO. v. STEAD LENS CO.

### (District Court, W. D. Missouri, W. D.   July 17, 1913.)

### No. 3,489.

1. PATENTS (§ 81*)—PRIOR USE—EVIDENCE TO ESTABLISH.

Oral testimony of a prior use is always open to suspicion and cannot prevail over the legal presumption of validity which accompanies a patent unless it is sufficient to establish such a use beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. § 81.*]

2. PATENTS (§ 168*)—VALIDITY—CANCELLATION OF CLAIMS IN PATENT OFFICE.

The cancellation of a claim in an application for a patent which is substantially identical with a remaining claim does not affect the validity of the latter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*]

3. PATENTS (§ 167*)—ANTICIPATION—PRIOR PATENTS.

That a drawing of a patent, through an error of the draftsman, shows a construction evidently not contemplated nor claimed by the inventor does not give the patent effect as an anticipation of a subsequent patent in that particular.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

4. PATENTS (§ 62*)—ANTICIPATION—MEASURE OF PROOF.

Anticipation must be proved by evidence so cogent as to leave no reasonable doubt in the mind of the court.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

5. PATENTS (§ 66*)—ANTICIPATION—ACQUIESCENCE IN ACTION OF PATENT OFFICE.

That an applicant for a patent acquiesced in the suggestion of the Patent Office that a feature of his device was shown in a prior patent does not estop him from denying the pertinency of the prior patent as an anticipation in other particulars.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. § 66.*]

6. PATENTS (§ 26*)—ANTICIPATION—PATENT FOR COMBINATION.

A patent for a combination is not anticipated nor invalid for lack of invention because an expert may be able to build up the patented device by selecting parts taken from the prior art.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

7. PATENTS (§ 35*)—INTENTION—EVIDENCE.

While great utility and extensive use will not alone sustain a patent, they constitute persuasive evidence of invention where the question is in doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

8. PATENTS (§ 157*)—CONSTRUCTION—RULES GOVERNING.

That interpretation which sustains a patent should be preferred to that which defeats the grant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. § 157.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—EYEGLASSES.

 The Borsch patent No. 637,444 for bifocal eyeglasses in which the lens is made of two pieces of glass of different indices of refraction, the smaller being mounted in a recess of the larger and exposed on one face thereof, and the Borsch, Jr., patent No. 876,933 for similar eyeglasses with the added improvement that the two parts of the lens are united by fusing, were neither of them anticipated and both disclose patentable invention. The devices also held capable of conjoint use and both patents infringed.

In Equity. Suit by the Kryptok Company against the Stead Lens Company. On final hearing. Decree for complainant.

William M. Stockbridge, of New York City, and John H. Atwood, of Kansas City, Mo., for complainant.

Theoph. D. Carns and Washington Adams, both of Kansas City, Mo., for defendant.

VAN VALKENBURGH, District Judge. Complainant, a New York corporation, is the owner of letters patent No. 637,444, issued November 21, 1899, to John L. Borsch, and of letters patent No. 876,-933, issued January 21, 1908, to John L. Borsch, Jr.; both for new and useful improvements in bifocal lenses. It alleges that the inventions and improvements set forth in said letters patent, respectively, are capable of conjoint use in one and the same bifocal lens, and that complainant and its licensees make, use, and sell bifocal lenses embodying the conjoint use of said inventions and improvements. It charges infringement on the part of defendant, and prays injunction, accounting, and damages.

To the bill the defendant, a Missouri corporation located at Kansas City, Mo., interposes the following defenses: (1) That both patents in suit are void for want of patentable novelty. (2) That both patents in suit are void for want of patentable invention. (3) That defendant has not infringed either patent. (4) That the patents in suit are not capable of conjoint use, and the defendant has not infringed said patents conjointly. (5) That complainant is not a bona fide corporation and was not incorporated in good faith and for a lawful purpose; that its organizers are engaged in unlawful combination in restraint of trade; and that it does not come into court with clean hands. Incidentally to these defenses, it is claimed that the alleged inventions and discoveries of the patents in suit were all anticipated in the prior art by patent and publication; and a prior use fatal to the second patent in suit is likewise asserted. The first patent contains but a single claim. In the second patent claims 1, 2, 3, 7, and 8 are the only ones in issue, and of these claim 3 has been selected as typical of the group of claims in said patent.

At the outset it may be said that, if the patents are valid and susceptible of conjoint use, it cannot be doubted that defendant's device constitutes an infringement, because, for the purposes of this case, the two lenses are practically identical. The defense of unlawful combination in restraint of trade may likewise be disregarded. There is no

substantial showing of any tendency toward monopoly, except such as inheres in the very nature and theory of the patent law; nor was this defense, if it be one, given prominence or emphasis at the hearing.

The defense of prior use may be dismissed with brief mention. It rests mainly upon the testimony of one Hoffman, an optician, of Minneapolis, Minn., who states that within a somewhat indefinite period, approximating the date of the Borsch, Jr., experiments, he made a very few pair of fused bifocal lenses, which he sold to customers. His testimony is uncertain and indefinite as to time and essential detail. In itself, as well as in its attempted corroboration, it is unsatisfactory and unconvincing. The record persuades me that Borsch, Jr., was the first to conceive this specific improvement, and that he prosecuted his experiments to final completeness and patent with reasonable diligence.

[1] Such oral testimony of a prior use is always open to suspicion, and it cannot prevail over the legal presumption of validity which accompanied the patent, unless it is sufficient to establish such a use beyond a reasonable doubt. This feature of the case falls within the principles announced in many decisions. National Hollow Brake-Beam Co. et al. v. Interchangeable Brake-Beam Co. (C. C. A.) 106 Fed. 693, 694, 703, 45 C. C. A. 544; Parker v. Stebler et al. (C. C. A.) 177 Fed. 210, 101 C. C. A. 380; Albright v. Langfeld (C. C.) 131 Fed. 473; Continental Rubber Works v. Single Tube Automobile & Bicycle Tire Co. (C. C. A.) 178 Fed. 452, 101 C. C. A. 436; Laas v. Scott (C. C.) 161 Fed. 122–126. I shall address myself, therefore, to a consideration of the defenses of anticipation and lack of patentability.

The first patent in suit, No. 637,444, recited that:

"Heretofore bifocal lenses have been frequently formed by matching and uniting edge to edge two pieces of lens glass, each constituting but part of a complete lens, and respectively suitably ground, the one for distant and the other for near vision, and various forms have by different constructors been given to the respective elements or sections of the lens; the only fixed requirement as to such sections being that they should when united present as to their combined outer edges the usual oval outline of a lens."

"In whatever forms the respective independent sections or elements of a bifocal lens of this character have been made, however, they have been united by bringing the respective edges of said sections or elements into contact and cementing the abutting edges by any suitable balsam or uniting medium or maintaining them in their assembled position by an inclosing lens frame."

The aim of the proposed patent is thus stated:

"This construction has been objectionable, however, by reason of the fact that, however carefully the sections are assembled and cemented, a minute cement-filled space exists between the abutting edges, and the cement which is present of course on both surfaces of the lens in time becomes slightly worn away under the action of heat and the attrition to which it is subjected in the cleaning of the lens, with the result that the permanence of the union between the elements or sections is impaired; furthermore the line of connection between the two sections of a bifocal lens as heretofore constructed as described is always visible and not only detracts from the appearance of the lens but is an annoyance to the wearer."

"Broadly stated, it is the object of my invention to produce a bifocal lens of an attractive efficient, and durable character, in which the objections hereinbefore stated to the existing forms of such lenses shall be obviated."

As described in the patent, this is done by taking a lens of crown glass suitable for far vision purposes, producing in one face thereof a recess of such form as to be adapted to receive and accommodate a smaller near vision lens of flint glass, having an index of refraction different from that of the larger lens, and securing this smaller lens within the recess of the larger by means of balsam or other suitable material, the result being a compound bifocal lens uniform in curvature and integral in structure from edge to edge, the minor lens not being visible to others than the wearer except on very close inspection; a crevice or joint between the elements, with its accompanying disadvantages, being entirely absent.

The claim declared was as follows:

"A bifocal lens formed of two pieces of glass of dissimilar index and size placed and secured face to face, the smaller of said lenses being mounted in a recess in the larger of said lenses, and exposed upon one face of the latter, substantially as set forth."

The essential novelty and invention claimed for this patent is that it for the first time discloses the use of glass of different indices of refraction in such combination as to permit a completed integral bifocal structure of the same thickness and uniformity of surface as a lens composed of but one kind of glass and having a single focal point. In this way the unsightliness, instability, and other infirmities pointed out as existing in former structures were either entirely removed or reduced to a more desirable minimum. If this device presents novelty and invention, its utility and desirability can hardly be disputed; but defendant contends that it presents neither the one nor the other.

In support of the defense of anticipation, something like 27 patents are cited as references. A number of these exhibit the development of the bifocal eyeglass or spectacle from its crude origin up to the application of the first patent in suit; others have to do with globes, lamp chimneys, photographic camera lenses, reflectors, and other articles of remote analogy. Others deal with achromatic lenses intended for the elimination of chromatic aberration caused by the dispersion of rays of light into their component colors. We are, however, relieved of any extended consideration of the greater number of these cited references, because it was conceded at the hearing that the defendant relied for substantial anticipation of the first patent in suit upon the British patent issued to Henry Edward Newton in 1866 for improvements in optical instruments; that to Nathan Lazarus in 1881 for improvements in the manufacture of achromatic lenses; and letters patent No. 392,053 issued to August Morck, Jr., in 1888 for improvements in spectacles or eyeglasses. With respect to the first two, it is sufficient to state that they concededly recognize the use of two kinds of glass, crown and flint, in the manufacture of lenses; as their titles indicate, they concern eyeglasses either incidentally or remotely and bifocals not at all. It is upon the Morck patent that defendant mainly relies for its defense of anticipation of the first patent in suit; and, if the claimed invention of the latter is not disclosed by the Morck patent, then it is not anticipated by any of the other references cited.

The Morck patent No. 392,053 dealt specifically with eyeglasses employed for combined near and far range purposes. Its invention—

"consists in securing upon the lower surface of the selected far-vision lens a spherically-ground lens of about one-fourth to one-third of the surface of the larger lens, and which is selected with a view to near-vision purposes, and when combined with the larger lens in the manner stated produces a glass adapted for use for both close and distant range. When the two lenses are united, as stated, the larger or far-vision lens extends to the lower rim of the inclosing frame on both sides of the near-vision lens. * * * It will be seen that the near-vision lens 8, while having its edge bounded by a curved line of which every part is equally distant from a center, which is preferably just outside of the rim at the lower side of the frame, is made to taper to a feather edge along the segmental line, and therefore the lens 8 has its thickest part along the lower edge. This construction obliterates the surface line 9 to the sight, while giving a perfectly defined area of near vision. It avoids the objection of a horizontal straight projecting ledge, which forms a shelf for the collection of dirt and dust when such near-vision lens is formed thickest at such straight line; and it makes the change from a far-vision to a near-vision lens gradual as the eye crosses the segmental line at its highest point on the surface of the far-seeing lens."

When the first patent in suit was originally presented to the patent office, it was rejected by the examiner in the following language:

"The claims of the above-entitled application are rejected in view of patent to Morck, Jr., No. 392,053, October 30, 1888, optics, eyeglasses."

Thereupon the applicant made the following amendments: He erased the word "preferably," as used in the specification describing the minor lens, making it described as "formed of flint glass" and of "glass of different index" instead of as "preferably formed of flint glass" and "preferably glass of different index." He also erased claims 2 and 3; there being three claims in the patent as originally filed. Original claim 1 was left without a numeral as the sole claim of the patent. Defendant contends that the use of the word "preferably" in the original specification indicated that Borsch did not then have in mind the use of glass of different index inbedded in a recess as the central idea of his invention. I think, however, that the specification as a whole clearly indicates that he had such structure in mind, and that the word "preferably" was erased in order that there might be no doubt respecting it, also to exclude any claimed interference with the Morck patent which might be predicated upon the use of projecting glass of the same index.

[2] No point is or can be made of the fact that claim 2 was canceled, because it obviously did not cover the full invention claimed; but defendant insists that the cancellation of claim 3 in response to this objection limited and narrowed original claim 1, now the contested claim of the first patent in suit. Claim 3 reads as follows:

"A bifocal lens consisting of a major lens embodying a recess in one face and a minor lens conformed to said recess and mounted and secured in place therein; said lenses being of glass of different index, substantially as set forth."

A comparison of this claim with the remaining claim of the first patent in suit, heretofore quoted, will disclose that in all particulars substantial to this controversy they are the same. This being true, the

cancellation of the superfluous third claim, substantially identical with the first, would not affect the latter. Bullock Electric Mfg. Co. v. Crocker-Wheeler Co. (C. C.) 141 Fed. 101–110. It has not been, nor to my mind can it be, pointed out in what possible way the cancellation of claim 3 was materially responsive to the examiner's objection nor in what way the erasure of that claim could narrow or restrict the claim which was left unchanged. With no other changes than those specified, Borsch again submitted his application with the nature of his claims thus specifically emphasized:

"The fact that Morck constructs both elements of glass of the same index, while applicant constructs his two elements of glass of dissimilar index, constitutes a distinction between Morck's structure and applicant's structure, which is fundamental and vital."

"By the use of glass of different index, applicant is enabled to provide a construction of bifocal lens in which both faces are, so to speak, smooth; that is to say, a construction in which the small minor lens does not project beyond the plane of the surface of the major lens."

"This construction, which is a very desirable and valuable one in the optician's art, would not be possible were both pieces of glass of the same index, as in such construction the result would be the same as though the whole lens were formed of one integral piece of glass throughout and there would not be two distinct focal points."

To this the examiner replied as follows:

"The present claim has been considered in connection with applicant's argument. It appears that the terms of the claim cover all of the views shown, but it is believed that the only construction illustrated which would be operative for use in a bifocal spectacle lens is that shown in figures 1 and 2, inasmuch as the difference in refractive power between glass of the lowest refractive power known and glass, or quartz, of the highest power known would not be sufficient to make a practical bifocal lens wherein the difference in magnifying power were dependent wholly upon the different indices of refraction of the glass. Therefore it is believed that applicant would be compelled to depend upon the difference of curvature of the major and minor lenses for all practical effect. Furthermore it is not considered invention merely to make a bifocal lens wherein the major lens is of a different kind of glass from the minor lens, in view of the fact that the difference in power secured thereby would be inappreciable."

"It is believed that applicant might be entitled to a patent if he were the first to insert in the concavity of a major lens a small or minor lens, and thereby obtain greater security in the junction of the two lenses so that they would be less likely to be displaced by the friction of spectacle wipers or of accidental contact with surrounding objects. But the Morck patent, cited, shows a small lens inserted in a concavity in a larger lens, the two combined forming a bifocal lens, and having, so far as the firmness of union is concerned, exactly the same advantages as are obtained by the construction of applicant. To make the two parts of different kinds of glass, having different refractive powers, is believed not to be invention in view of the common knowledge among opticians of the uses of the different kinds of glass, and particularly inasmuch as it is believed that in a spectacle the difference in refractive power would be practically insufficient to produce any appreciable difference of focus. It is thought, therefore, that the claim should be rejected."

There is no hint in this that the examiner thought that Morck was using glass of dissimilar index. There is every indication that he thought just the opposite in so far as the essentials of the invention are concerned, because he doubts the effectiveness of the combination when the minor lens is reduced so much in size. He does think that

the Morck patent discloses a small lens inserted in a concavity in a larger lens. He thinks that important only from the standpoint of firmness of union and decides that Borsch could not claim any invention by reason of that alone. He believes, in view of the common knowledge among opticians of the uses of different kinds of glass, that it is not invention to make the two parts of different kinds of glass having different refractive power; he bases this upon the assumption that in a spectacle the difference in refractive power would be practically insufficient to produce any appreciable difference of focus. Thereupon, without change of specification or claim, in letter or in syllable, the applicant combated the views of the examiner and made practical demonstration of the efficiency of his invention; and the necessary inference from the record is that the examiner receded from his position, for the patent was allowed without further objection.

Now, from all this, counsel for defendant argue that complainant, because of this reference and the views expressed by the examiner, is estopped from claiming anything disclosed by the Morck patent and contend that the Morck patent teaches not only the use of a recess, but also the employment of different kinds of glass having different refractive power. It is doubtful if this contention should be sustained. The patentee firmly stood upon his specification and claim without change. The examiner receded and allowed the patent. It may well be doubted whether any of his objections can operate to narrow the import of either specification or claim. Certainly they could have no such effect upon the use of glass of different index. If such a limitation can be raised, it must be from the disclosures of the patent itself, independently of anything said or done in the Patent Office. Defendant's experts and its counsel then attempt by elaborate and ingenious argumentation to make the Morck patent disclose not only a recess in which the minor lens is imbedded, but the necessary employment of different kinds of glass of different index of refraction. In my opinion, this effort fails utterly. Neither in specification nor claim is any reference made to such a use, and the inventor must necessarily have considered it of prime importance, if he had it in mind at all. The entire argument is based upon the alleged formation of figure 4 of the Morck patent; and, to make their theory consistent, experts and counsel are compelled to reconstruct the entire drawing. They first discover a depression where it has at least doubtful existence; and then, to make this depression pertinent, they are compelled to pare away an obvious excrescence upon the face of the same figure of the drawing. Thus they argue that the minor lens, according to this reconstructed drawing, is wholly imbedded in a recess in the major lens; and as it would then be inoperative, unless made of glass of different index from that of the major lens, why, of necessity, they say, glass of different index must have been used. This is not only in defiance of the drawing itself but of the spirit of the specification as well. The latter specifically seeks to get rid of the sharp horizontal line of separation existing in prior structures. It therefore describes the minor lens as segmental instead of horizontal in outline and makes it taper to a so-called feather edge at its upper point of contact; its

thicker portion being at the lower edge of the glass. If the entire minor lens was to be imbedded, why emphasize the thiner portion at point of contact, and confess the objectionable thickness at the lower portion? Obviously, if the glass were imbedded, there would be no appreciable edge upon the surface of the major lens, nor would the lens, as a whole, vary in thickness because of the junction of the two lenses. Throughout the entire specification and its accompanying claims, the language aptly describes a minor lens placed upon and not within the major lens. No mention whatever is made of any recess or of glass of different index, nor is any function or utility ascribed to either. Clearly neither the drawings nor the body of the Morck patent disclose either recess or the use of different kinds of glass. The drawings are crude, and the examiner appears to have thought that he detected a recess. He suggested this as an objection, and, because of an implied acquiescence in this suggestion, it may be that Borsch and his assigns are estopped to deny that there was a recess of some kind disclosed in this drawing. This consideration, and this only, could have the effect of narrowing the Borsch claim in any degree. Glasses purporting to be made in accordance with the teachings of the Morck patent have been submitted. In them the edge of the minor lens projects distinctly beyond the surface of the major lens, presenting in smaller degree the very defect which Morck was seeking to minimize. If he had in contemplation a recess at all, it is impossible to explain why he did not bury the minor lens completely, and thus fully attain the desired end. The conclusion is irresistible that his invention did not embrace the conception of a recess with a minor lens of different index imbedded therein; but, on the contrary, that his vision stopped with grinding the minor lens at its point of contact to what he terms a feather edge, which should stand out from the surface of the major lens in the smallest practicable degree.

[3] The disclosure of a recess in figure 4 of the drawings of the Morck patent, if it be a disclosure at all, was purely accidental. It was certainly not appreciated by the inventor. It is well settled that it is no anticipation that by a mistaken showing in the figure of a preceding patent, by the error of the draftsman, the structure of the patent appears contrary to the conception of the inventors and the reading of the patent. Edison Electric L. Co. v. Novelty Incandescent Lamp Co. (C. C. A.) 167 Fed. 977, 93 C. C. A. 387; Gray Telephone Pay Station Co. v. Baird Mfg. Co. (C. C. A.) 174 Fed. 417, 98 C. C. A. 353; Beckwith v. Malleable Iron Range Co. (C. C.) 174 Fed. 1001; Brill v. Third Ave. R. Co. (C. C.) 103 Fed. 289.

"When it is sought to ascertain the state of the art by means of prior patents, nothing can be used except what is disclosed on the face of those patents. They cannot be reconstructed in the light of the invention in suit and then used as a part of the prior art." Naylor et al. v. Alsop Process Co. (C. C. A.) 168 Fed. 911–920, 94 C. C. A. 315, 324.

"A prior publication, referred to as an anticipation, must be given effect in accordance with what it actually communicates to the public, and expert testimony cannot be received for the purpose of showing that statements therein made were erroneous, and to give it the effect it would have if reconstructed so as to disclose matters which it might or should have stated,

but which it in fact did not." Badische Anilin & Soda Fabrik v. Kalle & Co., et al. (C. C. A.) 104 Fed. 802, 44 C. C. A. 201; American Thermos Bottle Co. v. Vacuum Specialty Co. (C. C. A.) 178 Fed. 552, 101 C. C. A. 232.

The disclosures of the Morck patent, as interpreted by defendant, are at least vague and uncertain, and skilled experts differ radically as to their import.

[4] Anticipation must be proved by evidence so cogent as to leave no reasonable doubt in the mind of the court. The defendant has failed to carry the burden imposed upon it. Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) 165 Fed. 927; Underfeed Stoker Co. v. American Ship Windlass Co. (C. C.) 165 Fed. 65; Beckwith v. Malleable Iron Range Co. (C. C.) 174 Fed. 1001; Victor Talking Machine Co. v. Duplex Phonograph Co. (C. C.) 177 Fed. 248; Hillard v. Fisher Book Typewriter Co. (C. C. A.) 159 Fed. 439–441, 86 C. C. A. 469; Mueller Mfg. Co. v. Glauber (C. C. A.) 184 Fed. 609–620, 106 C. C. A. 613; Cimiotti Unhairing Co. et al. v. Comstock Unhairing Co. (C. C.) 115 Fed. 524.

[5] But conceding that because of the suggestion made by the examiner, and the asserted acquiescence of the applicant, complainant is precluded from claiming the recess as a substantive part of the Borsch invention, nevertheless it is not estopped from claiming everything Borsch, Sr., actually did invent nor from denying the pertinency of the Morck patent as an anticipation, with this exception: That it cannot maintain that the claim of the first patent in that particular covers the construction of the Morck patent. National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 Fed. 693–714, 45 C. C. A. 544; Owens Co. v. Twin City Separator Co. (C. C. A.) 168 Fed. 259, 93 C. C. A. 561; Wayne Mfg. Co. v. Benbow-Brammer Mfg. Co. (C. C. A.) 168 Fed. 271–279, 93 C. C. A. 573; Vrooman et al. v. Penhollow et al. (C. C. A.) 179 Fed. 296, 102 C. C. A. 484; Bossert Elec. Const. Co. v. Pratt Chuck Co. (C. C. A.) 179 Fed. 385, 103 C. C. A. 45; U. S. Peg-Wood, Shank & Leather Board Co. v. Sturtevant Co. (C. C. A.) 125 Fed. 382, 60 C. C. A. 248; Albright v. Langfeld (C. C.) 131 Fed. 473; Keystone Mfg. Co. v. Adams, 151 U. S. 139–144, 14 Sup. Ct. 295, 38 L. Ed. 103. The presumption of validity of the first patent in suit is strengthened by reason of its original rejection on the Morck patent. American Stove Co. v. Cleveland Foundry Co. (C. C. A.) 158 Fed. 978–983, 86 C. C. A. 182; United States Fastener Co. v. Bradley (C. C.) 143 Fed. 523–529; Hale & Kilburn Mfg. Co. v. Oneonta, C. & R. S. Ry. Co. (C. C.) 129 Fed. 598.

Let us now consider the defense of anticipation as applied to the second patent in suit. In this discussion we may disregard all the cited references but three. The defendant avowedly relies upon the Newton and Lazarus patents heretofore referred to and upon that issued to Leon Kokocinski July 28, 1896, for improvements in spectacle lenses. This patent had to do with welding together two sheets of glass, one colored or shaded and the other transparent, so that the upper portion of the lens might protect the eye from light. All that can be claimed for these three patents, cited against the Borsch, Jr., invention, is that they refer to the union of different pieces of glass by

the action of heat. As we have seen, the Newton patent deals with optical instruments in general, and describes a process not at all adapted to producing the delicate result required in an eyeglass lens, and particularly in a bifocal lens. The Kokocinski patent had, of course, an entirely different object in view; and the Lazarus patent was for the manufacture of achromatic lenses, which, as we have seen, deal with dispersion and not with refraction. However, it may be freely conceded that the welding or annealing of glass, under certain conditions, was known at the time of this alleged invention and had been known for many years. Despite that fact, no one had ever conceived of the happy expedient of applying this process to the perfection of a bifocal lens, nor, in fact, to any lens, except crudely to counteract dispersion; and the reason for this appears clearly from the testimony. Moreover, the bifocal lens is biaxial. The two lenses of which it is composed are not concentric. Both must be preserved in their true curvature, and the highest degree of precision is necessary. The comparative, minuteness of the parts, and the great delicacy of adjustment required, had created an accepted belief that such a process was impracticable even after its first suggestion by Borsch, Jr. He himself required years of experimentation before success was approximated. The old lens, even as improved by Borsch, Sr., still contained imperfections. Up to this point Canada balsam, or some other kind of cement, had been necessary to hold the lenses together. This was essentially less stable than a glass made integral by fusing. Time alone, together with the slight but continuous application of pressure incidental to cleaning, would cause the parts to separate. The cement itself contained imperfections and was subject to disintegration. The fusing process was a distinct advance from the standpoint of clearness of sight, stability, and appearance. By it the presence of the minor lens was rendered still more imperceptible. Therefore the combination of fusion with the prior structure of the Borsch, Sr., patent marked a distinct and important advance in the art. Here again I think the defense of anticipation must fail, and the support of this conclusion by the decided cases is so closely allied with the announcement of principles establishing invention that it is deemed unnecessary to duplicate citations.

[6] This is a product patent. The thing produced was clearly unknown before, and it is therefore immaterial that the separate features of the invention may be found in the prior art.

"It constitutes no anticipation and no defense to a claim of infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third. It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine, where they do substantially the same work by substantially the same means." Owens Co. v. Twin City Separator Co. (C. C. A.) 168 Fed. 259, 93 C. C. A. 561; National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 Fed. 693–706, 45 C. C. A. 544; Eldred v. Kirkland (C. C. A.) 130 Fed. 342, 64 C. C. A. 588; Knickerbocker Co. v. Rogers et al. (C. C.) 61 Fed. 297; Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275.

The presumption of invention is not overcome by the fact that an expert is able to build up the patented device by selecting parts taken from the prior art. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; McMichael & Wildman Mfg. Co. v. Ruth (C. C. A.) 128 Fed. 706–708, 63 C. C. A. 304; Thomson-Houston Elec. Co. v. Ohio Brass Co. (C. C.) 129 Fed. 378.

[7] That there was invention in the Borsch, Jr., patent is evidenced and emphasized by the number of patents set up by defendant as anticipations, all of which, where pertinent at all, lack some element which the successful patent they are alleged to anticipate possessed, also by the fact that the defendant has appropriated bodily the substantial structure of the Borsch patent. Schmertz Wire-Glass Co. v. Pittsburgh Plate-Glass Co. (C. C.) 168 Fed. 77; Naylor v. Alsop Process Co. (C. C. A.) 168 Fed. 911–917, 94 C. C. A. 315; Edison Electric L. Co. v. Novelty Incandescent Lamp Co. (C. C. A.) 167 Fed. 977–982, 93 C. C. A. 387. We must remember that appropriateness and obvious usefulness have an important bearing upon the question of invention; that simplicity does not detract from its merit; that, while great utility and extensive use will not alone sustain a patent, nevertheless, "where the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function, and has gone into immediate and general use, is pregnant and persuasive evidence that it involves invention. National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 Fed. 693–707, 45 C. C. A. 544. These principles have been forcibly announced in the following cases: Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Parks v. Booth, 102 U. S. 96, 26 L. Ed. 54; Loom Co. v. Higgins, 105 U. S. 580–591, 26 L. Ed. 1177; Keystone Mfg. Co. v. Adams, 151 U. S. 139–144, 14 Sup. Ct. 295, 38 L. Ed. 103; Potts v. Creager, 155 U. S. 597–606 et seq., 15 Sup. Ct. 194, 37 L. Ed. 275; General Elec. Co. v. Wagner Elec. Mfg. Co. (C. C. A.) 130 Fed. 772–778, 66 C. C. A. 82; Perkins Elec. Switch Mfg. Co. v. Buchanan Co. (C. C.) 129 Fed. 134–137; McKay & Copeland Lasting Mach. Co. v. Dizer et al. (C. C. A.) 61 Fed. 102–104, 9 C. C. A. 382; Doig v. Morgan Mach. Co. (C. C. A.) 122 Fed. 460–463, 59 C. C. A. 616; Gould Coupler Co. v. Pratt (C. C.) 70 Fed. 622–624; Hardware Co. v. Tabor Sash Co. (C. C.) 178 Fed. 831–841; Engineering Construc. Co. v. McMullen (C. C. A.) 160 Fed. 933–938, 88 C. C. A. 115; Albright v. Langfeld (C. C.) 131 Fed. 473–475.

[8] That interpretation which sustains and vitalizes the grant should be preferred to that which strikes down and paralyzes it. National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 Fed. 694, 45 C. C. A. 544.

[9] The court cannot be oblivious nor insensible to the development that has taken place in the art of bifocal spectacles and eyeglasses as generally known. The production of a glass effective for far and near vision, compact, stable, enduring, and sightly, was the desideratum long aimed at and but gradually realized. The present high degree of success was first obtained by the complainant company through the

patents in suit—a distinct and highly useful advance, which has practically revolutionized the art. The acceptance and adoption of the product was immediate and widespread. While the old-fashioned cemented bifocal is still in wide use because of its comparative cheapness, nevertheless no one who feels able to afford it will accept other than the fused bifocal. I think the conception and successful application of such valuable and elusive improvements rise to the plane of invention as distinguished from mere mechanical skill. While the dividing line between the two is not always sharply defined, nevertheless unyielding strictness should not operate harshly to withhold the reward of merit from marked scientific achievement. The defendant company has made a complete appropriation of complainant's product, and defends itself solely upon the ground of the alleged weakness of complainant's title. This casts upon it the burden of establishing its case to the entire satisfaction of the court. That it has failed to do, and whatever doubt, if any, may exist, must be resolved in favor of the recognized presumption of validity.

It remains only to consider whether these patents are capable of conjoint use, and whether the complainant can maintain its suit upon the bill tendered. Defendant contends that the two patents are inconsistent in that the first calls for two separate pieces of glass, while this element is absent from the Borsch, Jr., patent, as well as from defendant's structure. Each patent is invoked only to the extent that it discloses a distinct step of improvement; that of the first patent narrowed, as contended by complainant, and as conceded for the purposes of this argument, is the employment of glass of different indices of refraction in the combination described. The Borsch, Jr., patent adds the element of fusion as an advance over cement. The complainant owns both features, and it can avail itself of both in the same structure without inconsistency. The first Borsch patent describes a bifocal lens formed of two pieces of glass secured face to face by cement; the second Borsch patent a bifocal lens consisting of a body of glass or similar substance of any refractive power, and a portion of glass or similar substance of different refractive power secured by fusion to the said body of glass or similar substance. Here again two kinds of glass enter into the composition of the lens, the two being made integral by fusion. The one patent supplements the other; the two may be and actually are used in conjunction, and so used are infringed by defendant's structure.

The injunction and accounting prayed will be granted.