### ONE-PIECE BIFOCAL LENS CO. v. STEAD.

(District Court, W. D. New York. July 1, 1921.)

No. 232–B.

1. **Patents ⬭328—932,965, for one-piece bifocal lens, held valid and infringed.**
   The Conner patent, No. 932,965, for a one-piece bifocal lens, *held* not anticipated, valid, and infringed.

2. **Patents ⬭65—To anticipate, method of producing patented article must be shown.**
   Prior inventions or discoveries, relied on to anticipate or limit a later patent for a manufactured article, must disclose a method of producing such article.

---

⬭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the One-Piece Bifocal Lens Company against Harold J. Stead, doing business as the H. J. Stead Optical Company. Decree for complainant.

Edward Rector, of Chicago, Ill., and V. H. Lockwood, of Indianapolis, Ind., for plaintiff.

Howard P. Denison, and Eugene A. Thompson, both of Syracuse, N. Y., for defendant.

HAZEL, District Judge. [1] This suit was brought to restrain infringement of letters patent No. 932,965, of August 31, 1909, granted to plaintiff's assignor, Charles W. Conner, for a solid bifocal lens made of one piece of glass. Patents to the same inventor for the process, and patent to Alexander, No. 954,772, for the product were originally included in the bill; but they have been withdrawn, the former because of its recent reissue, and the latter because of its adjudicated invalidity. See One-Piece Bifocal Lens Co. v. Bisight Co. (D. C.) 146 Fed. 450, affirmed 259 Fed. 275, 170 C. C. A. 343. A supplemental bill was filed to include defendant's product, and the so-called shock absorber lens, which is also alleged to infringe the patent in suit. We are therefore not concerned herein with any infringement of the process of making bifocal lenses or any apparatus relating thereto, but simply with a new and useful article or product. The real question is whether the type of bifocal lens manufactured and sold by the defendant company is substantially the same as the product of the patent in suit. The single claim of the patent reads as follows:

"A bifocal lens comprising one piece of glass having an upper distance field, a lower and smaller near field, and an arched division separating the two fields, but the lens at the curved line of joinder of the upper and lower fields having a uniform thickness through both fields, whereby the said division is practically free from prismatic effects."

The defenses are limitation of the claim and noninfringement.

Several prior patents for bifocal lenses were discussed at the trial to establish that the claim is of limited scope, and hence that the product is differentiated from the product of defendant. It appears that the solid bifocal type of lens made of one piece of glass by grinding has received the favor of the purchasing public, and other types of bifocal lenses known to the art—so-called built-up lenses have become less popular, though they still possess extensive commercial value. The validity of the patent in suit was sustained by Judge Rose in One-Piece Bifocal Lens Co. v. Bisight Co., supra, and in that case the general state of the bifocal lens art was carefully examined and reviewed. Reference may be had to the opinion of the court for a detailed description of bifocal lenses generally and the difficulties confronting the patentee in overcoming objections to prior spectacles of that type. It was determined in that case, and the proofs here show, that the old solid bifocal lenses were made by cementing or building up, or by grinding down the upper surface of a single piece of glass to lessen its power, with the result that the division line between the upper and lower portions of the eyeglass was curved upwardly, and it was shown that

in such structures the ground or distance portion was too small to avoid prismatic effect.

Afterwards the Kryptok eye lenses, which were produced by building up or grinding, or by using two pieces of glass of different kinds and cementing or fusing them together, came on the market. See Kryptok Co. v. Stead Lens Co. (D. C.) 207 Fed. 85, and Kryptok Co. v. United Bifocal Co., 214 Fed. 983, 131 C. C. A. 279. These types of spectacles obtained deserved popularity, but, according to the record, the skilled in the art desired further improvements by grinding a better bifocal lens out of a single piece of glass than had been produced before, since the line of separation in such lens between the near and distance fields of vision resulted in aberration of the light rays. To overcome such defect in eye lenses was difficult of accomplishment. How to build up or grind the lower or reading portion of the glasses so as to give them the required strength and power, and using the larger or upper portion for distance vision without a too apparent separating line between the two fields, was the problem for solution. The problem was finally solved, as Judge Rose held in the Bisight Case, and as the proofs here show, by Conner (who invented new tools and apparatus), and a bifocal lens was produced by him by a method of merging the surfaces into each other and leveling them, and a lens of greater usefulness resulted.

Defendant contends, however, that the prior art requires strictly limiting the patent to a solid bifocal lens with two surfaces on the same level, or to an arched dividing line "between the two surfaces, which are of even thickness at the line of division, so as to avoid prismatic effect." Such a separation between the two fields, it is argued, is the very essence of the claim, and its novelty depends thereon.

Importance is given to the patents to Alexander, No. 954,772, and Gregg, No. 5,995, dated November 27, 1866. There is evidence that the application for patent by Alexander for a solid bifocal lens preceded the application of the patentee herein by about two months. Interference was declared between them on certain features of the invention, and priority was awarded to Alexander. While the interference was pending, the patent to one Mayer, No. 798,435, dated August 29, 1905, for a single-piece bifocal lens, was granted; but later on it was ascertained that his claim interfered with a similar feature of Conner's invention that was not involved in the Alexander interference. The Mayer patent and Conner's application then came into interference, and priority of invention was awarded by the Patent Office to Conner, to whom the patent in suit issued for the identical claim of the Mayer patent, and Mayer's patent was decreed canceled in the Bisight Case.

The Alexander patent, owned by the plaintiff herein, for a bifocal lens of a single crystal having formed upon one face a pair of concentric ground visual surfaces of different diopterics, was held invalid. The description of the Alexander patent does not disclose to the skilled in the art a practical method of making bifocal lenses of the character specified in the Conner claim in suit. Plaintiff's expert witness Wheeler testified that the defendant could not, by following the description in the Alexander patent, produce a lens similar to the lens attached to

Defendant's Exhibit E, because in following the Alexander description a lens would be produced having a much higher shoulder than is produced by practicing defendant's method, and one that would be impracticable. No eye lenses are shown to have ever been made under the Alexander patent. It is true that the briefs and arguments submitted to the court in the Bisight Case credited Alexander's patented process with practicability, regardless of an abrupt shoulder between the near and distance fields; but Judge Rose reached an opposite conclusion, and the evidence here establishes to my satisfaction that a bifocal lens of the character described in the patent in suit could not be produced by following the Alexander method. The description in the Gregg patent also shows abrupt ridges or shoulders at the point where the surfaces are separated. It does not make clear how the lenses were to be made, nor is there anything to show that there was any process known to the art for making them. In the Bisight Case the court said:

"The description [Gregg] does not tell how to make the article it described. It is one published at a time when those skilled in the art would not, either from its disclosure, or their knowledge, or from both combined, know how to produce it."

[2] The proofs in this case do not show that it was possible to produce plaintiff's bifocal lens by adapting either the Alexander or Gregg patent. The law is that prior invention or discoveries, relied on to anticipate or limit the claim of a later invention, must disclose a method capable of producing the result designed to be obtained. As said in Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, the burden of proof rests upon the defendant to show that the invention relied upon as a defense was capable of achieving the result, and "every reasonable doubt should be resolved against it." It is satisfactorily shown herein that Conner was the first to make a solid bifocal lens wherein the two field surfaces merged together by a curved division between the two fields, and that he accomplished what Gregg and Alexander failed to accomplish. He eliminated the injurious effects from a shoulder or abrupt line of separation between the surfaces. He advanced the art by making a meritorious improvement, and the claim, in my opinion, is entitled to a scope broad enough to protect his product from colorable evasion. The crucial question, therefore, is whether the lens produced by the defendant, a solid bifocal lens made of a single piece of glass by grinding, is an infringement. Defendant claims that its completed product has an intermediate zone of aberration between the near and distance fields; that, notwithstanding the similarity of the product to plaintiff's, the grinding of the shoulder by its process between the two surfaces materially differentiates its lenses.

Testimony was introduced to show that the lens-making tools used by defendant could not be used for making plaintiff's lens; that the shoulder produced by its method was described in the Gregg and Alexander and Mayer British patent. If I were convinced that the defendant's lenses embodied a substantial aberration, or that the fields of vision are not practically on the same level, I would incline to the view that defendant has avoided infringement; but the proofs do not permit any such determination. The witness Zircher, who formerly was

foreman in defendant's service, testifying for plaintiff, stated, true enough, that the tools used (Exhibit F) in grinding defendant's lens formed a vertical shoulder (see Exhibit E) between the distance and near fields; moreover, that he had been instructed while in defendant's employ to grind the fields of vision in such a way as to have a definite separating shoulder on the blanks. But he also testified that, notwithstanding the use of the centerless grinding tool for making the shoulder, the two surfaces in the operation were caused to merge together by polishing, which removed any shoulder irregularity at the division between the two surfaces and smoothed it. From such testimony it is quite clear that, when the defendant's blanks are ground, there are two fields of vision at different elevation, but that by the subsequent use for an hour or more of a pumice stone polisher the line of joinder is leveled to substantially conform to plaintiff's finished product.

Defendant's insistence that the polishing to which its lens is subjected merely grinds off the edge of the shoulder without decreasing the elevation or changing the optical surface, and forms an irregular sloping curve from one field to the other or a marked zone of aberration, is not substantiated by the evidence, for it is conceived that if such were the fact a comparison of defendant's lenses with plaintiff's would unquestionably be confirmatory. But upon making visual comparisons it is perceived that in defendant's constructions there exists no definite elevated surface aside from a line that separates the two optical fields the same as in plaintiff's lenses. A smoothing of unevenness, however, as, for example, in Conner's earlier products, is observed. There is no ridge or visible crease in defendant's products to indicate a marked zone of aberration, and whatever difference there is in the line or curvature is, I think, unimportant, since the line of division no doubt creates a little aberration in both products. Defendant's eye lenses in some instances seemingly show a wider arched line separating the near and distant fields, and it is quite likely that it in good faith desired to preserve a distinct zone of aberration; but any such difference or purpose does not avoid infringement (Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586), since, as heretofore indicated, the rubbing and polishing of the surfaces materially decreases any nonoptical zone or line created by the grinding tools used by it. They undeniably perform the same function as plaintiff's, and in my opinion are their equivalent. Comptograph v. Mechanical Co., 145 Fed. 331, 76 C. C. A. 205; American Co. v. Wyeth, 139 Fed. 389, 71 C. C. A. 485.

Defendant also urges that its lenses are manufactured in the manner described in Mayer's British patent, No. 22,432, application filed October 18, 1904; but the invention there was two years later than the invention in suit. No consideration need be given to any difference in the process by which defendant's lenses are produced, as it is immaterial by what means or by what process they are manufactured. It suffices that they are of substantially the same character as plaintiff's, performing the same functions, and by their use achieve the same result.

A decree for injunction and accounting, with costs, may be entered.