**JOHNS–MANVILLE CO., Inc., v. R. V. AYCOCK CO.**

No. 567.

District Court, W. D. Missouri, W. D.
March 7, 1927.

Bowersock, Fizzell & Rhodes, of Kansas City, Mo., Floyd A. Sanders, of Tulsa, Okl., and Roberts, Roberts & Cushman, of Boston, Mass., for plaintiff.

Watson, Gage & Ess and Arthur C. Brown, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is a suit for the alleged infringement of letters patent No. 1,184,673.

An application for such patent was filed by Charlie C. Fardon on February 26, 1916, and the grant was made on May 23, 1916.

It is alleged in the bill that the plaintiff became the owner of such patent by mesne and sundry conveyances from the patentee. It is further charged that the defendant, after notice and without license or permission of the plaintiff or its predecessors in title, infringed the invention covered by said patent to the great damage of the plaintiff.

The answer of the defendant, together with a stipulation filed, admits the granting of the patent and the ownership thereof by plaintiff, but denies in substance the novelty or utility thereof by averring that the means covered by said patent "were known and used by others in this country before the alleged invention thereof by the said Charles C. Fardon." Moreover, it is alleged by the defendant in its answer that the named patentee "was not the first and original inventor or discoverer of any material or substantial part of the thing patented in and by said patent No. 1,184,673, but that prior to the alleged or pretended invention by the said Charles C. Fardon all material or substantial parts of the thing patented had been invented or discovered by other persons." The answer further asserted that the said patent "did not disclose or show any patentable invention in view of the state of the art which existed at and before the time when the said Charles C. Fardon made the pretended inventions or discoveries set forth in said patent, and that in view of the said prior state of the art, the said alleged or patented invention did not involve the exercise of invention but merely the exercise of mechanical skill."

It was further alleged in the answer that certain conditions and limitations were "imposed upon the claims of said Letters Patent" in the procedure for its allowance, and that in consequence a correct interpretation of the claims allowed would not embrace any device made or sold by the defendant.

The patent involved in this suit is defined to be "certain new and useful Improvements in Storage-Tanks," and "relates to means for improving the conditions under which crude oil is stored." The object and purpose of the invention being "the provision of a novel roof or cover for the tank, which roof is gas-proof, the purpose being to prevent a multiplicity of leaks or vents through which gas may escape and furthermore preventing evaporation or carbonization of the fluid being stored."

The invention is further described as "a method for converting ordinary roofs of storage tanks into leak-proof roofs, so storage tanks now in common use may be made safe from danger, due to explosions and from waste due to evaporation of the contents of the receptacle."

There are but two claims in the patent and claim numbered 1, alone, is in controversy and before the court for construction. It is as follows:

"1. In a storage tank, a receptacle and a roof therefor, a sheathing covering the roof, a fabric engaging the sheathing and extending from the roof to the sides of the receptacle for sealing the joint between the roof and receptacle, and a binding means for binding the fabric against the side of the receptacle."

The details of the construction specified by the patentee and illustrated by his drawings involve (a) the metallic shell or casing of the tank; (b) an ordinary board covering over the top of the tank; (c) a metallic sheathing "now in common use" so rearranged and covered with roofing cement as to make same gas-tight, the cement covering supplemented with a coat of heavy paint; and (d) "preferably a fabric known as ducking, * * * the said fabric being continuous from the roof to the tank so that the joint between these two portions of the tank is effectually sealed." All of this is aided by appropriate applications of cement and the fabric is bound to the sides of the tank by (e) binding wire. It will be observed, as heretofore stated, that the purpose of the invention is to prevent leaks and evaporation of the fluid being stored and incidentally to avoid explosions.

A practical construction of a tank top under the patent owned by plaintiff involved ordinary boards on the top of the tank with a metallic sheathing laid thereon, covered with cement and paint, and then a fabric designated "hairinsul," engaging the sheathing, treated with silicate of soda to resist vapors, extending over the eaves of the tank and bound to the sides thereof by binding wire.

By stipulation and proof it was shown that the defendant used a similar structure for its tank tops, which in detail consisted of the ordinary board covering with a metallic sheathing laid thereon but not covering the entire top. Over this was placed a fabric called "celotex," which was covered with a gas-proof membrane, and upon that chicken-wire netting with burlap covering the whole. It is contended by the defendant that the object of its tank covering was to resist the heat and thereby prevent evaporation of the stored fluid.

The sole question for the determination of the court is whether, under the pleadings, the stipulation of the parties, and the evidence, the defendant's structure is an infringement of plaintiff's patent.

Plaintiff's patent was to prevent evaporation and leakage, whereas defendant's structure was to prevent evaporation. By plain-

tiff's patent it is sought to confine the gas that may arise from the oil within the tank, whereas the defendant seeks to prevent its arising. Each, however, indicate a purpose to make the covering gas-tight as nearly as may be. The defendant contends that oil tank tops cannot be made entirely gas-proof and that therefore the covering processes should be with a view to prevent the formation of gas. Other facts will be stated in the course of this memorandum opinion.

■ 1. The most important problem for solution in this controversy is an ascertainment of the differences, if any there may be, between the structures proffered by the parties. If such differences are found, the question then arises as to whether such structures, regardless of elements or materials employed, are substantial equivalents of each other, accomplishing the same result.

■ Within the patent law the substantial equivalent of a thing is the same as the thing itself; that is to say, "if two devices do the same work, in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." 20 R. C. L. p. 1156; Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

"Again, old ingredients known at the date of letters patent granted for an invention consisting of a new combination of old ingredients, if also known at that date as a proper substitute for one or more of the ingredients of the invention secured by the letters patent, are the equivalents of the corresponding ingredients of the patented combination." 20 R. C. L. p. 1156; Gill v. Wells, 22 Wall. 1, 22 L. Ed. 699.

It is asserted by the defendant that it makes no use of the metal sheathing which the plaintiff employs in its structure and that therefore its device is substantially different.

On the other hand, the plaintiff contends that the claim of its patent, in that regard, is in general terms "a sheathing covering the roof," and that it is by no means limited to a metallic sheathing, but that any substance which answers the same purpose, and which may be used to engage the fabric "extending from the roof to the sides of the receptacle for sealing the joint between the roof and receptacle," may be employed. The patent claim yields to this construction.

By the use of its "celotex" mopped on the deck with hot asphalt, covered with gas-proof membranes, chicken-wire netting, and burlap, the defendant's structure is brought within the doctrine of equivalents. It is effective in securing the identical results contemplated by the patent.

The differences between the two relate to mere details of construction; the one accomplishes the same result by means which are the obvious mechanical substitutes of those described in the patent and in plaintiff's processes. If therefore plaintiff's patent is a valid one, there is an infringement. Anderson v. Collins (C. C. A.) 122 F. 451, loc. cit. 455; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A.) 106 F. 693, loc. cit. 711; Goessling Box Co. v. Gumb (C. C. A.) 241 F. 674, loc. cit. 680; Disc Grader & Plow Co. v. Austin-Western Road Machinery Co. (C. C. A.) 254 F. 430, loc. cit. 433.

■ 2. In discussing other features of the case, the court must proceed under the presumption of validity in the patent. That there was a demand for some process in the construction of tank tops that would prevent evaporation and wastage appears beyond question. Concededly, the loss from leakage, because of the opening or vents in the ordinary tank top, was very great. This was augmented by what is characterized in the testimony as "wind-drift" and "thermal breathing." The loss from "wind-drift" is occasioned by the force of the wind through the vents or openings of the tank. "Thermal breathing" involves the rise and fall of temperature with the usual pressure upon the top of the tank. So far as the testimony shows, the weakness in tank top construction had not been solved until the patent owned by the plaintiff, with its processes, had been worked out and discovered by the patentee. Apparently the method of construction has gone into general use and is meeting with popular acclaim. This very fact argues strongly for the validity of the invention. Kinloch Telephone Co. v. Western Electric Co. (C. C. A.) 113 F. 659, loc. cit. 665; Naylor v. Alsop Process Co. (C. C. A.) 168 F. 911, loc. cit. 917; Acme Foundry & Machine Co. v. Oil Well Imp. Co. (C. C. A.) 2 F.(2d) 530, loc. cit. 531. Moreover, the burden is upon the defendant in this case to show invalidity of the patent beyond a reasonable doubt. Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153. The patent should be treated as valid.

3. It is the contention of the defendant that all material or substantial parts of the thing patented had been previously discovered and patented by other persons. Chief among the patents previously granted, refer-

ring to the same or similar subject matter, was a patent granted to John Thomas Robinson on September 16, 1884. This was described as an invention of "certain new and useful improvements in fruit cans." The object of that patent and the subject-matter thereof was entirely different from the one under observation.

The second patent mentioned by the defendant is one dated August 14, 1883, to Henry C. Thomas. The invention is described as "a new and improved insulated metallic roof," and the design was to furnish a conductor to avoid electrical combustion, which conductor was designated as a lightning rod. The objects there intended were entirely different from those involved in the present invention. The same comment might be made on a patent dated May 2, 1893, to Samuel N. Long, relative to the subject of "hermetically sealed buckets." The processes and means involved in all of these patents differ widely and materially from the processes involved in the instant case.

■ 4. The patent in suit was not anticipated by the patents mentioned. The combination of Fardon's patent could only be anticipated by the employment of the same or a similar group of mechanical elements. This was not done. The mechanical elements involved in the Fardon patent may be old, but they constitute in his patent a new combination with the effect of obtaining a new and useful result. Davis Mfg. Co. v. Levin Bros. (C. C. A.) 8 F.(2d) 972, loc. cit. 976; Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co. (C. C. A.) 215 F. 362, loc. cit. 369; Imhaeuser v. Buerk, 101 U. S. 647, loc. cit. 660, 25 L. Ed. 945.

5. In the course of Fardon's application for a patent, the original claims presented by him were rejected on prior patents, whereupon the applicant revised his claims so as to add the words "a sheathing covering the roof" as a new element and with the qualification that the fabric "engages the sheathing." It is therefore urged by the defendant that the new and really patentable element in Fardon's patent is a "sheathing covering the roof," and that the fabric functions differently by "engaging the sheathing." Absent this element with the qualifications as to the fabric, as stated, the device would not be patentable. Moreover, it is asserted by the defendant that any structure not infringing this element and the qualification as to the fabric would not be an infringement of the patent.

■ The claim must be narrowed to meet the rulings of the Patent Office. Hennebique Const. Co. v. Urban Const. Co. (C. C. A.) 182 F. 496; Brill v. St. Louis Car Co. (C. C. A.) 90 F. 666; Thacher v. Transit Const. Co. (D. C.) 228 F. 905; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335, United States Supreme Court decision, dated November 22, 1926.

■ It may be stated as a general proposition that the presumption of validity of the patent in suit is strengthened by reason of its rejection on other patents. Canda v. Michigan Malleable Iron Co. (C. C. A.) 124 F. 486, loc. cit. 493; Stead Lens Co. v. Kryptok Co. (C. C. A.) 214 F. 368, loc. cit. 375; Acme Foundry & Machine Co. v. Oil Well Improvements Co. (C. C. A.) 2 F.(2d) 530, loc. cit. 532; Zip Mfg. Co. v. Pusch (C. C. A.) 2 F.(2d) 828, loc. cit. 831.

■ Limiting our consideration, as must be done, to an examination of the facts and the law applicable to the single feature, "a sheathing covering the roof," with such a qualification of the fabric that it "engages the sheathing," and you have the real issue in the controversy. This subject has been heretofore covered on the subject of equivalents. The law is that:

"A party who merely substitutes another old ingredient for one of the ingredients of a patented combination is an infringer if the substitute *performs the same function as the ingredient for which it was substituted*, and was well known at the date of the patent as proper substitute for the omitted ingredient." 20 R. C. L. p. 1157; Gill v. Wells, 22 Wall. 1, 22 L. Ed. 699.

■ The defendant has merely changed the character of sheathing adopted and used in practical operation by plaintiff. The claim does not limit the combination to the use only of metallic sheathing but is broad enough to cover any agency, ingredient, or mechanism which would answer the same purpose. Defendant says it does not use the metallic sheathing. Let that be conceded, but the fact is that it employs a sheathing of a different material which serves the identical purpose as that served by plaintiff's reconstructed and altered metallic covering. The rule is that alterations or changes that are merely formal do not constitute any defense to a charge of infringing a patent for a combination. Gould v. Rees, 15 Wall. 187, 21 L. Ed. 39. "A combination is always an entirety." 20 R. C. L. p. 1157.

To all intents and purposes the defendant's device involves the use of "a sheathing covering the roof," and then the defendant so employs its fabric, such as the woven chicken-wire, burlap, asphalt, and other processes as to "engage the sheathing," and thereby it brings itself squarely within plaintiff's combination and infringes its patent.

6. The fact that the defendant may add other elements to the combination employed by it does not avoid infringement. Both parties achieve practically the same result with combinations which are substantially equivalents. Walker on Patents (5th Ed.) p. 431; Detroit Motor Appliance Co. v. Burke et al. (D. C.) 4 F.(2d) 118, loc. cit. 123.

A careful examination of the record in this case sustains the contention made by the plaintiff of patent infringement. The substitution of material made by defendant is not such a substantial departure from the combination claimed in the patent as to free it from the charge of infringement. Thrall v. Poole (C. C.) 89 F. 718.

It follows, therefore, that the judgment of the court should be for the plaintiff. The testimony does not warrant any finding by the court as to damages. The plaintiff, however, is not precluded from claiming damages, and accordingly, if desired by the parties, a special master will be appointed to ascertain the profits accruing to the defendant, because of the infringement and consequent damages to the plaintiff.