## DURKEE-ATWOOD CO. v. FIFTH SECOND CO.

## SAME v. JUCKEM CO.

## SAME v. HILGER.

Nos. 10269–10271.

Circuit Court of Appeals, Eighth Circuit.
Oct. 31, 1935.

Harold Olsen and A. C. Paul, both of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis, Minn., on the briefs), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellees.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

FARIS, Circuit Judge.

The three actions above entitled are each suits in equity for injunctions and accounting for the alleged infringements of two patents, both owned by plaintiff. By consent these actions were consolidated for trial, and plaintiff being cast therein took these appeals, in the conventional way.

The two patents alleged by plaintiff to have been infringed are patent No. 1,777,-435, issued to Hogelund, October 7, 1930 (application filed December 30, 1929), and patent No. 1,915,098, issued to Kile, June 20, 1933 (application filed June 24, 1931), both assigned to plaintiff, at a time not relevant, because not attacked. Both of the patents in suit relate to so-called frostshields, which are devices used for the purpose of preventing frost from forming on glass windows, particularly windows and windshields of motor vehicles. In all such devices this result is generally accomplished by securing to the window intended to be protected from the formation of frost a transparent member, in such wise as to provide, between the window and such member, a space filled with dead air, which being a poor conductor of both cold and heat, prevents the condensation and freezing of moisture, which absent the device would accumulate on the windshield and freeze, thus obscuring vision.

In its simplest explanation the frostshield described in the Hogelund patent in suit consists of a plate of transparent glass set in a flexible frame of rubber, which frame has a flat side or surface which contacts with the glass of the window or windshield to be protected, and projects beyond the plane of the glass element of the frostshield. This flat surface of the frame is coated with an adhesive to make it adhere to the window, and this adhesive, which is dark in color, is prior to use and to protect it in packing, storage, and transportation covered by a thin cloth covering called in the record Holland cloth.

The Kile patent consists of a similar plate of glass, but not set in a rubber frame. In lieu thereof, there is attached to the face of the margins of this glass plate, a so-called spacing element, which consists of a narrow strip of gluey, called "tacky," in the record, compressible material, preferably uncured rubber. One surface of this "tacky" element contacts, as already indicated, with the frostshield and sticks thereto, while the other surface, in use, is cemented, or glued to the window or windshield to be protected. Again, as in the Hogelund patent, there are attached to this sticky surface, prior to use, strips of Holland cloth to prevent sticking and soiling in transportation and storage.

In case No. 10269, against the Fifth-Second Company, defendant therein is charged with the infringement of claims 1 and 2 of the Hogelund patent in suit. Claim 2 we think is typical, and it reads thus:

"A clear vision device for attachment to glass windows and windshields comprising a transparent panel embraced in a continuous flexible frame, said frame having a flat attaching face, and adhesive material of a dark color applied to the attaching face of said frame in an unbroken layer for the purpose of attaching it to a glass window or windshield and indicating whether or not such attachment is complete and effective."

In case No. 10271, against Hilger, claims 1 and 2 of the Hogelund patent are alleged to have been infringed. So, nothing is involved in the case against Hilger that is not involved in the Fifth-Second Company case.

The defenses set up by the several answers were in the main similar and conventional, that is, they contained a denial of the fact of infringement and a denial of the validity of each of the patents in suit, for that the patents did not, nor did either of them, constitute invention, because anticipated both by the prior art and by prior public use. Defendants clearly failed to sufficiently prove prior public use, and so that defense falls out of the case.

In addition to these defenses, defendant Hilger filed a counterclaim setting up harassment by plaintiff in and about the subject-matter; but this counterclaim is not involved on this appeal, because the court below dismissed it for lack of jurisdiction, and Hilger did not appeal.

The trial court rendered no opinion, but filed his conclusions of law and fact, in each of the three cases. He held that claims 1 and 2 of the Hogelund patent in suit are void for lack of invention; that claim 1 of the Kile patent is likewise void for lack of invention; and that defendant Juckem Company had not infringed claims 2 and 3 of the Kile patent; with the result that the bills in each case were dismissed with costs.

Numerous errors are urged, or a single error in protean forms; but as is usual in

a patent suit for infringement and injunction, the sole inquiries are, First, are the patents in suit valid or void for lack of invention? and, Second, if valid, have they been infringed by defendants?

Coming first to the question of validity of claims 1 and 2 of the Hogelund patent in suit, it is plain, we think, that nothing therein is new over Frederickson, No. 1,-563,701, except the use of dark cement, and the Holland cloth covering. Frederickson in his figure 6 shows a flat attaching face for his felt frame and on page 2 of his patent, an optional attachment with glue or other adhesive. For he says, "In the form of the invention shown in figure 6, the edges of the celluloid sheet are embedded in a felt strip and this strip may be applied to the windshield or the like, by means of some adhesive material such as glue." The Holland cloth covering of a sticky substance is not only old in numerous arts, but would, when a sticky, slow drying, or non-drying glue is used, be so obviously suggested as to destroy invention. The use of dark cement added nothing to the patent; since the same result was present, as the evidence in the case without contradiction conclusively shows, even when clear water was used.

The presumption of validity arising from the fact of a grant is met here and dissipated by the file wrapper and contents, which contain no reference to figure 6 of the Frederickson patent, nor any reference to the above-quoted specifications. How far this omission is chargeable to soliciting counsel we cannot say. For counsel urged on the Patent Office as a fact the erroneous statement, that Frederickson used and showed nothing but a frame "having a cupped attaching surface intended to be secured to the pane by a vacuum, so as to dispense with other securing means." So, we conclude that the view of invalidity of claims 1 and 2, of the Hogelund patent in suit, as held and announced by the court nisi, is very obviously correct.

In case No. 10270, against the Juckem Company, defendant therein is charged with infringing said claims 1 and 2 of the Hogelund patent in suit, as also claims 1, 2, and 3 of the Kile patent in suit. In passing, we understood counsel for appellant in argument to disclaim any reliance on an infringement of claim 2 of the Kile patent in suit, and the note made on the record by the writer indicates that claim 2 is not now in this appeal. But if it is, it is so plain

that defendant Juckem Company has not infringed it by the accused device in evidence, that it need not be further considered. This for the reason that in order to obtain the allowance of claims 2 and 3, solicitors for Kile were compelled to make this argument and restriction:

"Claim 4, 5, 6 and 9 refer to the spacing element as being of uncured rubber. Surely there is no suggestion in any of the three patents of record that uncured rubber might be used for this purpose. This is a discovery that applicant has made and which entitles him to a patent because by reason of the discovery he has produced a new and useful combination not disclosed in the prior art. The combination is a unitary spacing element and securing device. This essential idea is totally lacking in the art of record. Uncured rubber possesses all the advantages of being tacky so that it will readily adhere both to the frost shield and the windshield and will secure these members firmly in assembled relation. Moreover, the material is compressible as well as tacky so as to make an air-tight connection. In addition, the Examiner is requested to note that in claim 6 it is stated that the ends of the strips of uncured rubber meet at the corners of the plate and form self-closing joints."

From this it seems clear that solicitors restricted their contentions, of novelty as to claims 2 and 3, to the use of uncured rubber as a spacing element, because it was "a unitary spacing and securing device." Defendant in the accused device used a cured or vulcanized rubber spacing element, made up of two thin strips of rubber, with a very thin cloth element interposed between such strips, and the whole rendered integral in the process of manufacture. The "tackiness" of defendant's frame was not inherent as claimed by Kile's solicitors for the uncured rubber frame of Kile, but was brought about by glue or cement manually added to the strips of the spacing element before use.

In the Kile patent in suit, the question of the validity of claim 1 thereof, held by the trial court to be invalid, is much closer and more serious. This patent is obviously a combination patent. The close point in claim 1 is whether it was invention to attach the compressible frame of the frost-shield to the glass plate thereof by an adhesive, instead of imbedding the edges of said plate in this compressible frame, as is done in the Frederickson patent. For as

said above, Frederickson illustrates in figure 6 a shield in which the transparent member, in that case celluloid, is imbedded in a felt strip, which, of course, is compressible, as is the uncured rubber of Kile. This felt strip Frederickson says may be glued to the windshield, when thus imbedded in his felt frame. So all Kile did over Frederickson was to attach the transparent plate—which is, of course, the equivalent in patent law of the glass plate used by Kile—to the felt frame by glue or other adhesive, instead of imbedding the plate in the felt frame. Was this invention, or was it the mere exercise of mechanical skill? While the question we think is close, and while looking backward in a patent case with knowledge of what has been done, distorts mental vision, it seems to us that having learned from Frederickson that the felt frame could be attached to the windshield by glue, or some adhesive, it was then but a step in mechanical skill to see that if the felt frame could be glued to glass on one side, glass could be glued to it on the other. And that was all Kile did over Frederickson's disclosures as shown by the Frederickson patent. Moreover, there can be no invention in gluing or cementing paper, rubber, leather, or similar substances to glass. This has been known and done for years, and defendant cites Lavater, a French patent, issued in 1867, among others, as proof of the practice, if any proof were needed. Regrettably, we cannot notice or consider the Dutch patent to Unmack. There may be invention in the use for the purpose of a particular glue or cement which unites (as counsel insisted) in a single article the two attributes of being a "unitary spacing element and securing device," at least, the Patent Office seems so to have deemed; otherwise, as we construe the file wrapper and contents, this patent would not have been issued. As shown by figure 6 of Frederickson and page 2 of his patent, when compared to Kile, we repeat the former imbedded his transparent plate in the compressible frame, while Kile glued one side of the said frame to the glass and then glued the other side of the frame to the windshield, all of which seems to us to have been clearly suggested by Frederickson. How far the use of "tacky," a rather unusual, but seemingly proper synonym of "sticky" or "gluey," may have moved the patent office in overlooking the rather plain language and figures of the Frederickson patent, it is not possible to say. For it is too plain for argument to the contrary that

when an adhesive, such as tire, or electrician's tape, or surgeon's plaster is put on felt, it becomes a compressible tacky element and is the equivalent of the uncured rubber used by Kile. True, claim 3 calls only for a "tacky compressible material." This lacks definiteness because steel, wood, air, and well-nigh all things are compressible. For compressibility is a matter of degree and may exist absent elasticity and resiliency. The quantity and quality of the compressibility is, however, defined and limited here by the language of soliciting counsel.

So, we conclude that claim 1 of the Kile patent in suit is void for the lack of invention, and that claims 2 and 3 were not infringed in view of the restricted language of these two claims. For, as said already, defendant did not use a tacky, compressible strip; it used a double and slightly resilient strip of cured rubber having a strip of cloth interposed integrally between the two rubber strips. This was rendered tacky, it is true, by the addition to the strip of glue or cement. But it was not a compressible element, as the word is used and limited in the claim, when the claim is read in the light of the limitations made in order to secure the grant. We have examined the cases of Jensen-Salsbery Laboratories v. Salt Lake Stamp Co. (C. C. A.) 28 F.(2d) 99, Barbed Wire Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154, Eibel Process Case, 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523, and others urged upon our attention as examples of instances wherein infinitesimal structural changes over the prior art have been held to constitute invention and to be patentable. We are of opinion that each of them may be distinguished.

The case is not lacking in human interest. During a number of years, from 1927 to the issuance of the Kile patent, Hilger bought all of his rubber frames and cements from plaintiff. He came in contact with Kile, who had charge of the production of articles bought by Hilger. It seems fairly clear from the whole record that while it was cement which retained the frostshields of Hilger in position, and not suction from the retention of a vacuum, as he deemed, this fact did not become known to Hilger till he saw the Hogelund shield. It is fairly apparent that this business contact with Kile and Hilger's efforts in 1929 to obtain better cements from plaintiff caused Kile to see the efficacy of ad-

hesives before the fact ever dawned on Hilger. The situation is, of course, not one of estoppel, nor does it hardly rise to the stature of bad faith, yet we think it is such as not to cause the plaintiff "to be the object of any strained solicitude on the part of a court of equity," as was said in a slightly analogous situation by this court in the case of Acme Foundry & Machine Co. v. Oil Well Improvements Co., 2 F.(2d) 530, 533.

It follows that the three cases and each of them should be affirmed with costs and so we order.